Nelson, Ch. J.
The damages for the marble on hand, ready to be delivered, was not a matter in dispute on the argument. The true measure of allowance in respect to that item was conceded to be the difference between the contract price, and the market value of the article at the place of delivery. This loss the plaintiffs had actually sustained, regard being had to their rights as acquired under the contract.
The contest arises out of the claim for damages in respect to the remainder of the marble which the plaintiffs had agreed to furnish, but which they were prevented from furnishing by the suspension of the work in July, 1837. This portion was not ready to be delivered at the time the defendants broke up the contract, but the plaintiffs were then willing and offered to perform in all things on their part, and the case assumes that they were possessed of sufficient means and ability to have done so.
' The plaintiffs insist that the gains they would have realized, over and above all expenses, in case they had been allowed to perform the contract, enter into and properly constitute a part of the loss and damage occasioned by the breach: and they were accordingly permitted, in the course of the trial, to give evidence tending to show what amount of gains they would have realized if the contract had been carried into execution.
Oil the other hand, the defendants say that this claim exceeds the measure of damages allowed by the common law "for the breach of an executory contract. They insist that it is simply a claim for the profits anticipated from a supposed good bargain, and that these are too uncertain, speculative and remote to form the basis of a recoveiy.
It is not to be denied that there are profits or gains derivable from a contract which are uniformly rejected as too contingent and speculative in their nature, and too dependant upon the fluctuation of markets and the chances of business, to enter into a safe or reasonable estimate of damages. Thus, any sup *68 posed successful ’operation the party might have made, if he had not been prevented from realizing the proceeds of the contract at the time stipulated, is a consideration not to be taken into the estimate. Besides the uncertain and contingent issue of such an operation in itself considered, it has no legal or necessary connection with the stipulations between the parties, and cannot therefore be presumed to have entered into their consideration at the time of contracting. It has accordingly been held that the loss of any speculation or enterprize in which a party may have embarked, relying on the proceeds to be derived from' the fulfilment of an existing contract, constitutes no part of the damages to be recovered in case of breach. So a good bargain made by a vendor, in anticipation of the price of the article sold, or an advantageous contract of resale made by a vendee, confiding in the vendor’s promise to deliver the article, are considerations always excluded as too remote and contingent to affect the question of damages. (Clare v. Maynard, 6 Adol. & Ellis, 519, and Cox v. Walker, in the note to that case; Walker v. Moore, 10 Barn. & Cress. 416; Cary v. Gruman, 4 Hill, 627, 8; Chitty On Contr. 458, 870.)
The civil law is in accordance with this rule. “In general,” says Pothier, “the parties are deemed to have contemplated only the damages and; interest which the creditor might suffer from the nonperformance of the obligation,-in respect to the particular thing which is the object of it, and not such as may have been incidentally occasioned thereby in respect to his other affairs: the debtor is therefore not answerable for these; but only for such as are suffered with respect to the thing which is the object of the obligation, damni et interesse ipsam rem non habitant.” (1 Evans’ Poth. 91; and see Dom. B. 3, tit. 5, § 2, art. 3, 4, 5, 6.)
When the books and cases speak of the profits anticipated from a good bargain as matters too remote and uncertain to be taken into the account.in ascertaining the true measure of damages, they usually have reference to dependant and collateral engagements entered into on the faith and in expectation of .the performance of the principal contract The, performance or non *69 performance of the latter may and doubtless often does exert a material influence upon the collateral enterprises of the party; and the same may be said as to his general affairs and business transactions. But the influence is altogether too re-mete and subtile to be reached by legal proof or judicial investigation. And besides, the consequences, when injurious, are as often perhaps attributable to the indiscretion and fault of the party himself, as to the conduct of the delinquent contractor. His condition, in respect to the measure of damages, ought not to be worse for having failed in his engagement to a person whose affairs were embarrassed, than if it had been made with one in prosperous or affluent circumstances. (Dom. B. 3, tit. 5, § 2, art. 4.)
But profits or advantages which are the direct and immediate' fruits of the contract entered into between the parties, stand upon a different footing. These are part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfilment of any other stipulation. They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed perhaps the only inducement to the arrangement. . The parties may indeed have entertained different opinions concerning the advantages of the bargain, each supposing and believing that he had the best of it; but this is mere matter of judgment going to the formation of the contract, for which each has shown himself willing to take the responsibility, and must therefore abide the hazard.
Such being the relative position of the contracting parties, it is difficult to comprehend why, in case one party has deprived the other of the gains or profits of the contract by refusing to perform it, this loss should not constitute a proper item in estimating the damages. To separate it from the general loss would seem to be doing violence to the intention and understanding of the parties, and severing the contract itself.
The civil law. writers plainly include the loss of profits, in .cases like the present, within the damages to which the com *70 plaining party is entitled. They hold that he is to be indemnified for “ the loss which the non performance of the obligation has occasioned him, and for the gain of which it has deprived him.” (1 Evans' Poth. 90; Dom. B. 3, tit. 5, § 2, art. 6, 12.) And upon looking into the common law authorities bearing upon the question, especially the later ones, they will be found to come nearly if not quite up to the rule of the civil law.
In Boorman v. Nash, (9 Barn. & Cress. 145,) it appeared that the' defendant contracted in November for a quantity of oil, one half to be delivered to him in February following, and the rest in March ; but he refused to receive any part of it. ,And the court held that the plaintiff was entitled to the diffeence between the contract price, and that which might have been obtained in market on the days when the contract ought to have been completed. (See M’Lean v. Dunn, 4 Bing. 722.) The case of Leigh v. Paterson, (8 Taunt. 540,) was one in which the vendor was sued for not delivering goods on the 31st of December, according to his contract. It appeared that, in the month of October preceding, he had apprised the vendee that the goods would not be delivered, at which time the market value was considerably less than on the 31st of December. The court held that the vendee had a right to regard the contract as subsisting until the 31st of December, if he chose, and recover the difference between the contract price, and the market value on that day. (See also Gainsford v. Carroll, 2 Barn. & Cress. 624.)
The above are cases, it will be seen, in which the profits of a good bargain were regarded as a legitimate item of damages, and constituted almost the only ground of recovery. And it appears to me that we have only to apply the principle of these cases to the one in hand, in order to determine the measure of damages which must govern it. The contract here is for the delivery of marble, wrought in a particular manner, so as to be fitted for use in the erection of a certain building. The plaintiffs’ claim is substantially one for not accepting goods bargained and sold; as much so as if the subject matter of the contract *71 had been bricks, rough stone, or any other article of commerce used in the process of building. • The only difficulty or embarrassment in applying the general rule, grows out of the fact that the article in question does not appear to have any well ascertained market value. But this cannot change the principle which must govern, büt only the mode of ascertaining the actual value of the article, or rather the cost to the party producing it. Where the article has no market value, an investigation into the constituent elements of the cost to the party who has contracted to furnish it, becomes necessary; and that, compared with the contract price, will afford the measure of damages. The jury will be able to settle this upon evidence of the outlays, trouble, risk &c., which enter into and make up the cost of the article in the condition required by the contract, at the place of delivery. If the cost equals or exceeds the contract price, the recovery will of course be nominal: but if the contract price exceeds the cost, the difference will constitute the measure of damages.
It has been argued that, inasmuch as the furnishing of the marble would have run through a period of five years—of which about one year and a half only had expired at the time of the suspension—the benefits which the party might have realized from the execution of the contract, must necessarily be speculative and conjectural; the court and jury having no certain data upon which to make the estimate. If it were necessary to make the estimate upon any such basis, the argument would be decisive of the present claim. But in my judgment no such necessity exists. Where-the contract, as in this'case, is broken before the arrival of the time for full performance, and the opposite party elects to consider it in that light, the market price on the day of the breach is to govern in the assessment of damages. In other words, the damages are to be settled and ......Inin ed according t.n the existing state of the market,at the fonc the cause of action arose, and not at the time fixejíJorjull_ performance. TKé oasis upon which to estimate the damagés^LWtíieiuití, is just as fixed and easily ascertained in cases *72 like the present, as in actions predicated upon a failure to perform at the day.
It will be seen that we have laid altogether out of view the sub-contract of Kain & Morgan, and all others that may have been entered into by the plaintiffs as preparatory and subsidiary to the fulfilment of the principal one with the defendants. Indeed, I am unable to comprehend how these can be taken into the account, or become the subject matter of consideration at all, in settling the amount of damages to be recovered for a breach of the principal contract. The defendants had no control over or participation in the making of the sub-contracts, and are certainly not to be compelled to assume them if improvidently entered into. On the other hand, if they were made so as to secure great advantages to the plaintiffs, surely the defendants are not entitled to the gains which might be realized from them. In any aspect, therefore, these sub-contracts present a most unfit as well .as unsatisfactory basis upon which to estimate the real damages and loss occasioned by the default of the defendants. The idea of assuming that the plaintiffs were necessarily compelled to break all their sub-contracts, as a consequence of the breach of the principal one, and that the damages to which they may thus be subjected ought to enter into the estimate of the amount recoverable against the defendants, is too hypothetical and remote to lead .to any safe or equi-' table result. And yet, the fact that these sub-contracts must ordinarily be entered into preparatory to the fulfilment of the principal one, shows the injustice of restricting the damages, in cases like the present, to compensation for the work actually done, and the item of materials on hand. We should thus throw the whole loss and damage that would or might arise out of contracts for further materials &c. entirely upon the party not in fault.
If there was a .market value of the article in this case, the question would be a simple one. As there is none, however, the parties will be obliged to go into an enquiry as to the actual cost of furnishing the article at the place of delivery; and the court and jury should see that in estimating this amount, it be *73 made upon a substantial basis, and not left to rest upon the loose and speculative opinions of witnesses. The constituent elements of the cost should be ascertained from sound and reliable sources; from practical men, having experience in the particular department of labor to which the contract relates. ' It is a very easy matter to figure out large profits upon paper; but it will be found that these, in a great majority of the cases, become seriously reduced when subjected to the contingencies and hazards incident to actual performance. A jury should scrutinize with care and watchfulness any speculative or conjectural account of the cost of furnishing the article that would result in a very unequal bargain between the parties, by which, the gains and benefits, or, in other words, the measure of" damages against the defendants, are unreasonably enhanced. They should not overlook the risks and contingencies which are almost inseparable from the execution of contracts like the one in question, and which increase the expense independently of the outlays in labor and capital.
These views, it will be seen, when contrasted with the law as expounded and applied by the circuit judge, necessarily lead to the granting of a new trial. .
Beardsley, J.
The circuit judge clearly erred in that part of his charge to the jury which related to the contract of the plaintiffs with Kain & Morgan. No damages are allowable on account of this contract, nor am I able to see how it can be regarded as relevant evidence upon any disputed point connected with the amount for which the defendants are liable.
The main question in the case arises out of the claim of the plaintiffs in respect to that portion of their contract with the defendants which remained wholly unexecuted in July, 1837. I think the plaintiffs are entitled to recover the .amount they would have realized’ as profits, had they been allowed fully to execute their contract. The. defendants are not to gain by their wrongful act, nor is that to deprive the- plaintiffs of the advantages they had secured by the contract, and which would *74 have resulted to them from its performance. The jury must therefore ascertain what it would probably have cost them to complete the contract, over and above the materials on hand; including the value of the marble required, the labor of quarrying and preparing it for use, the expense of transportation, superintendance, and insurance against all' hazards, together with every other expense incident to the fulfilment of the undertaking. The aggregate of these expenditures is to be deducted from the amount which would be payable for the performance of this part of the contract, according to the prices therein stipulated, and the balance will be the damages which the jury, should, allow for the item under consideration.
Remote and contingent damages, depending on the result of successive schemes or investments, are never allowed for the violation of any contract. But profits to be earned and made by the faithful execution of a fair contract are not of this description. Á right to damages equivalent to such profits results directly and immediately from the act of the party who prevents the contract from being performed.
Where a vendor has agreed to sell and deliver personal property at a particular day, and fails to perform his contract, the vendee may recover in damages the difference between the tiontract price, and the market value of the property at the time when it should have been delivered. (Chit. On Contr. 445, 5th Am. ed.; Dey v. Dox, 9 Wend. 129; Gainsford v. Carroll, 2 Barn. & Cress. 624; Shepperd v. Hampton, 3 Wheat. 200; Quarles v. George, 20 Pick. 400; Shaw v. Nudd, 8 id. 9; 2 Phill. Ev. 104.) So, if a person who has agreed to purchase goods at a certain price refuses to receive them, he must pay the difference between their market value and the enhanced price which he contracted to pay. (2 Stark. Ev. 1201, 7th Am. ed; Boorman v. Nash, 9 Barn. & Cress. 145.)
These principles are strictly applicable to the present case. In reason and justice there can be no difference between the damages which should be recovered for the breach of an ordinary agreement to buy or sell goods, and one to procure build *75 ing materials, fit them for use, and deliver them in a finished state, at a stipulated price. In neither case should the wrongdoer be allowed to profit by his wrongful act. The party who is ready to perform is entitled to a full indemnity for the loss of his contract. He should not be made to suffer by the delinquency of the other party, but ought to recover precisely what he would have made by performance. This is as sound in morals as it is in law. (Shannon v. Comstock, 21 Wend. 461; Miller v. Mariner's Church, 7 Greenl. 51; Shaw v. Nudd, 8 Pick. 13; Swift v. Barnes, 16 id. 196; Royalton v. The Royalton & Woodstock Turnpike Co., 14 Verm. Rep. 311.)
The plaintiffs were not bound to wait till the period had elapsed for the complete performance of the agreement, nor to make successive offers of performance, in order to recover all their damages. They might regard the contract as broken up, so far as to absolve them from making further efforts to perform and give them a right to recover full damages as for a total breach. I am not prepared to say that the plaintiffs might not have brought successive suits on this covenant, had they from time to time made repeated offers to perform on their part, which were refused by the defendants: but this the plaintiffs were not bound to do.-
There can be no serious difficulty in assessing damages according to the principles which have been stated. The contract was made in 1836; and, according to the testimony, about five years would have been a reasonable time for its execution. That time has gone by. The expense of executing the contract must necessarily depend upon the prices of labor and materials. If prices fluctuated during the period in question, that may be shown by testimony. In this respect there is no need of resorting to conjecture; for all the data necessary to form a correct estimate of the entire expense of executing the contract, can now be furnished by witnesses.
If the cause had been brought to trial before the time for completing the contract expired, it would have been impracticable to make an accurate assessment of the damages. This is no reason, however, why the injured party should not
*76 have his damages; although the difficulty in making a just assessment in such a case has been deemed a sufficient ground for decreeing specific performance. (Adderly v. Dixon, 1 Sim. & Stu. 607, and the cases there cited.) In Royalton v. The Royalton & Woodstock Turnpike Co., (14 Verm. R. 311, 324,) an action was brought on a contract which had about twelve years to run. And the court held, in granting a new trial, that the rule of damages “ should have been to give the plaintiffs the difference between what they were to pay the defendants,, and the probable expense of performing the contract; and thus assess the entire damages for the remaining twelve years.” No rule which will be absolutely certain to do justice between the parties can be laid down for such a case. Some time must be taken arbitrarily at Avhich prices are to be ascertained and estimated; and the day of the breach of the contract, or of the commencement of the suit, should perhaps be adopted under such circumstances. But we need not, in the present case, express any opinion on that point. . No conjectural estimate is required to ascertain what would have been the expense of a complete execution of this contract; but the state of the market, in respect to prices, is now susceptible'of explicit and intelligible proof. And where that is so, it seems to me unsuitable to adopt an arbitrary period ; especially as the estimate of damages must in any event be somewhat conjectural.
I think the defendants are entitled to a new trial, and that the damages should be assessed upon the principles stated.
Bronson, J.
As the marble had no market value, the question of profits involves an inquiry into the cost of the rough material in the quarry, and the expense of raising, dressing, and transporting it to the place of delivery. There may have been •fluctuations in the prices of labor and materials between the day of the breach and the time when the contract was to have been fully performed; and this makes the question upon which my brethren are not agreed. I concur in opinion with the chief justice, that such fluctuations in prices should not be taken into the account in ascertaining the amount of damages, but *77 that the court and jury should be governed entirely by the state of things which existed at the time the contract was broken. This is the most plain and simple rule : it will best preserve the analogies of the law ; and will be as likely as any other to do substantial justice to both parties.
New trial granted.