WINDSOR.
*February,*
1842.

Royalton.
*v.*
R. and W.
Turnpike Co.

TOWN OF ROYALTON *v.* The ROYALTON and WOODSTOCK
TURNPIKE COMPANY.

Where damages are claimed, for the breach of a special contract, the de-
claration must count upon the contract.

The common counts will avail in such cases, only where the terms of the
special contract have been fully performed, on both parts, and nothing
remains but the simple duty of paying for money, labor, or goods, as the
the case may be.

It is not always sufficient to describe a contract in the terms in which the
contract, itself, is expressed.

If the contract be equivocal, or obscure, its obligations should be described
in the language of the law, (with certainty to a common intent) to avoid
the consequences of a demurrer, or motion in arrest.

But if the contract be described in the terms of the contract itself, it is
no variance.

In construing contracts, courts will endeavor to avoid what is unequal, un-
reasonable, and improbable, if this can be done consistently with the
words of the contract.

Towns and turnpike corporations have almost an unlimited discretion, in
regard to entering into contracts for building roads and bridges, and
keeping them in repair, and may contract to pay a gross sum, at once,
or by instalments or an annuity.

The powers of the directors of private corporations, to bind them by con-
tracts, depends exclusively upon the charter and by-laws (or statutes)
of such corporations respectively.

Before evidence of the contents of a writing should be admitted in evidence,
it should be shown that inquiry has been made at the place, and of the
person, where, or with whom, it was last deposited.

The rule of damages, for the breach of special contracts, where nothing
has been paid, is to give the difference between what was to be paid
by one party, and the value of what was to be done by the other party,
and thus assess the entire damages.

ASSUMPSIT in two special counts, to which were added the
common counts. Plea, *non assumpsit,* and trial by jury.

The first count was, in substance, as follows :—

In a plea of the case for that, on the ninth day of Septem-
ber, 1830, at Royalton, in the county of Windsor, there was
a bridge across White river, near the village of Royalton, to
accommodate travellers, &c., which had before been erected
and supported by said town of Royalton as a part of the
public highway leading from said village to Pomfret, in said
county, which bridge said town of Royalton were bound to
keep in repair ; that, on said ninth day of September, 1830,

WINDSOR,
*February,*
1842.

Royalton
*v.*
R. and W.
Turnpike Co.

at said Royalton, it was mutually agreed, by and between the plaintiffs and defendants, that the said defendants should lay out and support their turnpike road across said bridge and support the same as a part of their said turnpike road, and that the plaintiffs would pay the said defendants, towards the support of said bridge, twenty-five dollars annually for the term of twenty years, and in pursuance of said agreement the said defendants did lay out their said turnpike road across said bridge, as aforesaid, to wit, at said Royalton, on the same ninth day of September, 1830, and kept said bridge in repair from year to year for several years, until the tenth day of March, 1838, when the defendants suffered the the said bridge to decay, and remain without repair, and become of no use, when it became absolutely necessary to erect a new bridge, at the place where said bridge had stood, and where it was when the contract aforesaid, between the plaintiffs and defendants, was made as aforesaid, and where said bridge had become so decayed as aforesaid; and said defendants neglected and have ever since neglected to erect a new bridge or to repair the one thus decaying as aforesaid. And the plaintiffs aver that they have ever performed all things in said contract on their part to be performed; that they paid to the said defendants, twenty-five dollars annually towards the support of said bridge, for each and every year, from the making of said contract, until the ninth day of September, 1838, when the said defendants had wholly ceased to keep said bridge in repair, and wholly neglected to erect a new bridge in its stead, and altered the survey of their road, and so laid out the same as to carry the travel, upon said turnpike road, to and across said river upon a new bridge erected by the plaintiffs across said river, more than a mile distant from the said bridge which the defendants so agreed to keep in repair as aforesaid, and the plaintiffs, in order to accommodate the necessary travel to and from the said village, and said Pomfret, across the said river at the place where said bridge, so to have been repaired, was at the time of making the contract aforesaid, have been under the necessity of erecting, and have erected, a new bridge, at the place last aforesaid, in doing which they have expended much labor and large sums of money, to wit, to the amount of $700; to wit, at Royalton aforesaid, on the day and year last afore-

said, of which the said defendants then and there had notice.

Second count. For that, at said Royalton, on the ninth day of September, 1830, there was one other bridge across said river, on the road leading from the village in said Royalton southward to Pomfret, which last said bridge was erected by the inhabitants of said Royalton, and which they were holden to keep in repair, and, at Royalton aforesaid, on the day and year last aforesaid, in consideration that the plaintiffs then and there promised the defendants that they, the plaintiffs, would pay to the defendants, towards the support of said bridge, twenty-five dollars, annually, for the term of twenty years, the said defendants promised the plaintiffs that they, the said defendants, would lay out and support their turnpike road across the bridge last aforesaid, and would support said bridge as a part of their turnpike road during said term of twenty years, which the defendants have wholly neglected to do, by reason of which the plaintiffs have been obliged to expend and have expended large sums of money in repairing said bridge and in erecting a new bridge in its stead, &c., to wit, the sum of $700, of which the defendants had notice.

On the trial in the county court, the plaintiffs offered in evidence a copy of the records of the town of Royalton, showing that at a meeting of said town, duly warned, held on the 9th day of September, 1830, the following vote was passed, viz :—

'Voted, that if the Royalton and Woodstock turnpike com-'pany will lay out and support their road across the bridge 'over White river near Royalton meeting house, and support 'said bridge as a part of said turnpike, the town of Royalton 'will pay the sum of twenty-five dollars, annually, for the 'term of twenty years, to said company towards the support 'of said bridge.'

The plaintiffs also offered in evidence a paper purporting to be a copy of a contract, recorded in the town clerk's office in Royalton, made between Royalton and the defendants, of the following tenor ;—

'Whereas, the town of Royalton, at a town meeting 'holden on the ninth day of September, 1830, voted (recit-'ing the vote of the town above set forth.)   Now, as sole 'director of said turnpike company, I hereby accede to the

Windsor,
February,
1842.

Royalton
v.
R. and W.
Turnpike Co.

Windsor.
February,
1842.

Royalton
v.
R. and W.
Turnpike Co.

' proposition contained in said vote and do hereby, as such ' director, obligate and bind said company to lay out and ' support their road across the said bridge and support said ' bridge as part of said turnpike, as is in said vote men-' tioned.        EDWIN EDGERTON, director of the
' Royalton and Woodstock Turnpike company.'

The defendants objected to the admission of this paper. The plaintiffs then called Edwin Edgerton as a witness to prove that such a contract was executed between the parties, relating to said bridge.   This testimony was objected to by the defendants, on the ground that the contract itself should be produced or its loss first proved.   The court permitted the witness to testify that he once made such a contract, but not to testify to its contents.   The plaintiffs then offered a book of records of the town of Royalton, in which the contract appeared to have been recorded, accompanied with testimony that search had lately been made in the town clerk's office of Royalton and among the papers of the town treasurer and also among the papers of the selectmen and no such contract could be found.   There was no testimony tending to show that said contract was ever in either of those places, except that the records of said town showed that such contract was recorded in the town clerk's office.   The defendants objected to the book of records but it was admitted.

The plaintiffs offered in evidence the records and by-laws of the Royalton and Woodstock turnpike company, show-ing that such by-laws authorized the appointment of a director, or three directors, as a majority of said company might deem necessary, who should have power to make all necessary contracts in behalf of said company, for the pur-pose of carrying into effect the purposes of the grant; and further showing that at the annual meeting of said company, duly warned, held on the first Monday of January, 1830, said Edgerton was appointed sole director of said company for the year next ensuing, and that, at said meeting, a vote was passed appointing said Edgerton a committee to lay out and alter the road of the company in such place or places as in his opinion might be expedient for the year ensuing. These records and by-laws were objected to by the defend-ants but admitted by the court.

The plaintiffs then called said Edgerton to prove the con-

tents of said written contract, to which the defendants ob-
jected, on the ground that the plaintiffs had not proved its
loss, or given the defendants notice to produce it; but, as it
did not appear that the original paper was ever in the custody
of the defendants, the objection was overruled, and the wit-
ness testified that he, as sole director of said turnpike com-
pany, executed such a contract as was found recorded in the
record book of the town of Royalton, as above stated.

Windsor,
February,
1842.

Royalton
v.
R. and W.
Turnpike Co.

The plaintiffs also introduced testimony tending to show
that they had annually paid the defendants twenty-five dollars
as alleged in their declaration.

The plaintiffs then introduced testimony tending to show
that the bridge was out of repair in the fall of 1838, and
winter and spring following, and that on the 2d day of May,
1839, notice was given to Gardner Winslow, who was sole
director of the said turnpike company, that said bridge was
thus out of repair; that on the 14th day of May, 1839, the
town of Royalton held a town meeting at which they direct-
ed the selectmen to put said bridge in a good state of repair;
that on the 5th day of the next July the town of Royalton, by
their selectmen or committee,commenced repairing said bridge,
and that since September, 1838, the defendants had done
nothing towards the support of said bridge. There was no
proof that the town of Royalton ever paid the defendants any-
thing, after the annuity which fell due in September, 1838.

The plaintiffs further introduced evidence tending to show
that the defendants, by their directors, changed their turnpike
road and carried it across the river near the house of Jacob
Fox, in Royalton, and carried it over a bridge erected by said
town in 1837. This was done on the 26th day of Novem-
ber, 1838, and from that time forward the defendants ceased
using the bridge at Royalton village. There was also evi-
dence tending to show that when the contract was made,
the old turnpike bridge at Fox's was gone and that the
bridge below the village was old and the defendants were
obliged to build and did build a new bridge, two reaches in
1831, and one other in 1832, and that on the 14th of May,
1839, the bridge required to be rebuilt; also that the bridge
at Fox's, which the town had built in 1837, was in repair.

The defendants requested the court to charge the jury,
that if they found that the defendants made such a contract

WINDSOR,
*February,*
1842.

Royalton
*v.*
R. and W.
Turnpike Co.

as testified to by Edgerton, and that the defendants supported and maintained said bridge up to November, 1838, when the road of defendants was altered and thus the use of the bridge was discontinued, it was a fulfilment of the contract on their part and the plaintiffs could not recover; that if they believed that the plaintiffs, by their selectmen or committee, after the meeting of said town in May, 1839, went on in conformity with the vote of said town and repaired said bridge, and have ever since used it as a public bridge and have from time to time repaired it as occasion required, it was an abandonment of the contract between the parties, by mutual consent, and the plaintiffs could recover for nothing done since said town meeting in May, 1839; especially if they found that the town had not paid them or offered to pay them any thing since September, 1838; that, in any event, the plaintiffs could not recover anything unless they first notified the defendants that the bridge was out of repair, and requested them to put it in repair. The court were also requested by the defendants to lay down some rule of damages in case the jury found for the plaintiffs. And the court did charge the jury, that if they found the contract proved as alleged in the plaintiffs' declaration, the plaintiffs were entitled to recover such sum, as, from the evidence submitted, they should judge would make the plaintiffs good for the damages they had suffered, by reason of the defendants abandoning the contract and leaving the bridge upon the town in such a condition as to require rebuilding; that the jury would limit their inquires to the time when both the parties ceased in *fact* to act under the contract; that if the bridge was out of repair, the defendants were bound to know it and make the necessary repairs; that, if they believed the evidence submitted, the defendants were under contract to maintain the bridge; that if they found that both parties went on under the contract for eight years, and that Royalton paid $25.00 per annum during that time, the defendants were bound to fulfil their part of the contract, and that it would not be just to cast the burden of supporting the bridge upon the town; that they would take into consideration the circumstance that the defendants had laid their road over the bridge at Fox's, which bridge was built by the town, and, in

view of all the evidence return such a verdict as they thought the justice of the case requires.

The jury returned a verdict for the plaintiffs and the defendants excepted.

*C. Marsh*, for defendants.

The paper, purporting to be a copy of the contract made by Edgerton, as director of the turnpike company, was improperly admitted by the county court.

This paper, which only purports to be a copy of a paper, is certified by the town clerk to be a true copy of the original as found in the book of records in Royalton town clerk's office.

The paper recites the vote of the town, and then an acceptance of the proposal as made by the town in that vote, by Edgerton, the director of the turnpike. But the paper is without date, and was evidently made and signed sometime after the date of the vote.

*Such acceptance* does not prove a contract made the 9th of September, 1830, and was inadmissible, being a *copy* of a *copy*, without any proof that the first was a *true copy*.

It was not a paper proper for record in the town clerk's office, and being there recorded, is no proof that it was a *true copy*.

It is nowhere shown that the warning for the town meeting on the 9th of September, 1830, contained an article, that this subject was to be acted upon. This vote is therefore void and the record of it is not evidence in the case.

The paper showing the contract, and the evidence of Mr. Edgerton, ought not to have been admitted, because there was no proper proof of the loss of the original paper. The copy of that paper and the vote of the town, taken together, do not prove the contract, as alleged in the first count, to have been made on the 9th of September. And being a *special promise*, the proof must sustain the contract as alleged. And the *time* of making it is material.

The contract was not consumated till the proposal made by the town was accepted, and the certificate implies that it was accepted *after* the day of the meeting.

Even if the papers were *properly* admitted, they do not support either of the *special counts* in the declaration. The

WINDSOR,
*February*,
1842.

Royalton
*v.*
R. and W.
Turnpike Co.

WINDSOR.
*February*,
1842.

Royalton
*v.*
R. and W.
Turnpike Co.

first count states that the parties mutually agreed, &c., that the defendants would lay their road across the bridge, (as we read it,) twenty years ; and that the plaintiffs would pay defendants $25.00 annually for the term of twenty years, that is, that there were mutual and independent contracts, and each the consideration of the other.

The second states the same thing more formally, that, in consideration that plaintiffs promised to pay defendant $25.00 annually for twenty years, defendants promised plaintiffs that they would lay out the road across the bridge and support the bridge for twenty years.

But the vote or proposal of the town, which the director of the turnpike accepted, was not—that if the corporation would *promise*, or *had promised* to lay out the road and support the bridge, that plaintiffs would pay, &c., but if the turnpike company *would actually lay out the road*, across the bridge as a part of their road, and *actually* support the bridge, plaintiffs would pay the $25.00 annually for twenty years ; thus making the contract of plaintiffs actually *dependent* on the performance of the contract on the part of defendants. If the contract was as the declaration states, we could annually sue for the $25.00 whether we performed on our part or not. And, as the rule of damages might be different, each might have his remedy without regard to performance on the other side. Surely this will not be pretended.

It would seem that plaintiffs' counsel, at least, *partly* understood the contract in the same way, for he has taken much care to aver performance on the part of plaintiffs, and, at the trial, to establish the fact. And it is certain that the parties so understood the transaction, for the defendants laid the road across and supported the bridge as long as it was thought to be for their interest, and then laid the road elsewhere. And the plaintiffs ceased to pay the annuity. The contract *then*—that is, 26th of November, 1838—came to an end. The defendants have not stipulated to support the bridge for any given number of years, and, as appears by the contract, had a right to cease the support of the bridge, and alter the road at any time, and the plaintiffs duty to pay ceased at the same time.

The plaintiffs then in the summer of 1839, as their duty

Windsor,
February,
1842.

Royalton
v.
R. and W.
Turnpike Co.

was, went on and built a new bridge, *after* the contract was at an end, and were not at expense *before.*

This view of the subject, if correct, and we are confident it is, disposes also of the *two general counts.*

There is another view of this action more fatal than any yet presented. It is this :—The town of Royalton, even if the warrant for the meeting had an article mentioning the subject matter to be acted upon (which it did not,) had no authority to bind itself to pay money for twenty years to come. It might perhaps bind itself for one year. *Stetson* v. *Kempton,* 13 Mass. 272.

The proposition, both as being without a proper warning on the subject, and as being what the inhabitants had no right to offer, was *void.* And being a void agreement, if acceded to by defendants could be no consideration for a contract on the part of defendants.

Again, if the contract is construed as we think the declaration states it, and as the court by the charge seem to have understood it, i. e. to lay the road and keep it there, and support the bridge for twenty years, the corporation or the director had as little right to accept the proposition as the town had to make it.

The corporation could bind itself for only one year. The corporation has a right to lay, and from time to time, to alter the road. And the director could neither bind himself, the corporation, nor his successors in office, to keep the road in any place, nor support any particular bridge for any given time whatever.

We would ask, by what authority either party could make the contract which the plaintiffs aver they did make ?

The court charged the jury that if they found the contract proved as alleged in the declaration, the plaintiffs were entitled to recover such sum as would make them good for the abandonment of the contract by defendants. That if they found the contract proved, and that the parties went on under it for eight years, and the town paid $25.00 per annum, during that time, the defendants were bound to filfil their part of the contract, and that it would not be just to cast the burden of supporting the bridge upon the town after that time.

As it does not appear, in the bill of exceptions, that any

Windsor,
February,
1842.

Royalton
*v.*
R. and W.
Turnpike Co.

evidence was given of the expense of building the bridge in 1839, the damages, or some part of them, must have been given for the non-performance of the contract subsequent to 1839.

On the whole it is quite impossible for the court to do less than grant a new trial.

*T. Hutchinson,* for plaintiffs.

1. We are unable to discover any validity in the objections to the copies from the town clerk's records for the purpose of showing where the original contract was when it was last seen, and thereby discover where to search for it, introductory to proof of its loss and its contents.

2. The loss was sufficiently proved to admit the proof of the contents of the written contract.

3. No notice was necessary to the defendants to produce the original contract, for there was no evidence of its ever being in their possession. Edgerton was sole director, and signed the contract as such.

4. The by-laws and records of the defendants show that Edgerton had sufficient authority to make such a contract ; and their acting under it, and having the benefit of it eight years, furnishes ample confirmation of his act in making the contract.

5. The charge to the jury was correct. The contract was mutual for twenty years. And when the town had erected a new bridge, and the defendants moved their road from its former route and placed it over the new bridge, and stopped repairing the old bridge, there was a failure and refusal of the defendants to perform the remainder of the contract on their part ; and threw the burden of repairing the old bridge upon the town, against their will. Every thing concerning it was as much within the knowledge of the defendants as of the plaintiffs ; and yet plaintiffs did give notice of this want of repair to the sole director, as was proved on trial.

Neither party had a right to abandon this contract without the consent of the other. And the town making these repairs, when obliged to do it on account of the neglect of the defendants, is very far from being evidence of an abandonment of the contract by the town.

The opinion of the court was delivered by

REDFIELD, J. — In regard to the question of variance, it has been urged that it is unimportant, as, at all events, the general counts, which are found in the declaration, are sufficient to justify the recovery. That is true, when the terms of the special contract have been performed by both parties, so that nothing more remains to be done but the simple duty of paying for money, or labor, or goods, &c. But that is not this case. Here the claim, on the part of the plaintiffs, is founded expressly upon the non-performance of the special contract, and *sounds* in damages therefor wholly. In all such cases the declaration must be special, and if there be a variance it is fatal.

We think, however, that there is no variance in the present case. The first count, after a very long inducement, in stating the obligation, adopts very nearly the words of the contract itself. - This is sometimes sufficient and sometimes not. That depends upon the degree of precision and certainty with which the contract is drawn. All contracts, however vague and uncertain in their import, when brought before courts, must be enforced in some way, unless they are so imperfect that it is apparent either that the minds of the parties never did meet, and so no contract was made, or else that the parties omitted such parts of the writing as to leave it mere conjecture what was intended. In all other cases courts will put such construction upon the contract as will, most probably, all things considered, coincide with the expectations of the parties, at the time of entering into the contract. But in regard to a declaration, it should be certain to a common intent, and where the contract is not so it becomes the duty of the pleader intelligibly to express that view of the contract upon which the plaintiff's claim is founded. If this is not done, the declaration will be bad upon demurrer, and many times on motion in arrest of judgment. It could hardly be said, with propriety, that such a case presented any question of variance, for the declaration, instead of being, as it should be, a description of the contract, *in the language of the law*, is a description of it *in its own language ;* but it is not, on that account, any less a *description of it.*

But, in the second count, the plaintiffs have declared upon

VOL. XIV. W. R. IV.        41

WINDSOR,
*February,*
1842.

Royalton
*v.*
R. and W.
Turnpike Co.

WINDSOR,
*February,*
1842.

Royalton
*v.*
R. and W.
Turnpike Co.

the contract according to what they conceive or claim to be its legal import, i. e. that in consideration the plaintiffs would pay defendants twenty-five dollars annually for the term of twenty years, the defendants promised them that they would lay out their road so as to cross this bridge, and would support the bridge for the same term. Now it is said this is not the fair import of the contract. We think any other construction would render it a very absurd contract, on the part of the town. If the town had a bridge which the defendants wished to use, it is hardly supposable that the plaintiffs would consent to pay them an annuity of twenty five dollars to induce them to use it, and still permit them to abandon it at will. It is not shown that this bridge required immediate repairs. Very likely it might continue to subserve the purpose of its erection many years, without requiring very much repairs. But, within the twenty years, it would require to be rebuilt; and from accidents, perhaps, it might be necessary to rebuild it more than once. To allow the defendants, then, to abandon, at will, would be to pay them a premium to induce them to use the bridge while it did last. The consideration for the plaintiffs' promise was the risk which the defendants incurred in undertaking to support the bridge for the term agreed. This construction is surely quite as consistent with the *terms* of the contract as any other, and it is the only one which makes its mutual obligations in any sense equal, or reasonable, or probable.

In regard to the right of towns to make such contracts we entertain no doubt. It is true, indeed, that towns can only bind themselves by such contracts as come within the scope of the legitimate objects of their creation. In regard to these objects, their discretion, in order to consist with the degree of freedom necessary properly to consult their own interests, must be, in a great measure, unlimited. One of these objects is the maintaining of public highways. They might, no doubt, contract with an individual to build a road or bridge, and to repair it, or to warrant it to stand, without repair, for any reasonable number of years, for a stated sum, at once, or by instalments, or for a specified annuity. And that case is, in principle, the same with the present. Such a course, in regard to building bridges, is not an uncommon one, and, to my knowledge, its legality has never been questioned. It

Windsor,
February,
1842.

Royalton
v.
R. and W.
Turnpike Co.

is but applying to the present subject-matter the principle of the cases which have already been decided, in relation to the powers of towns. *Hazen* v. *Strong,* 2 Vt. R. 427. *Briggs* v. *Whipple,* 6 Vt. R. 90. *Pawlet* v. *Strong,* 2 Vt. R. 442. *Schoff* v. *Bloomfield,* 8 Vt. R. 472.

In regard to the authority of the defendants to enter into such a contract, we think it is precisely commensurate with that of towns, so far as respects the building and repairing of their road, which is the object of their creation. We do not perceive any good reason why such a contract as the present, with a view to save some portion of the expense of supporting an expensive bridge upon their road, would not come legitimately within the range of their discretion. If courts should undertake to place any very nice, certainly any very narrow, limits upon the exercise of such a discretion, either by towns or turnpike corporations, it would be likely to defeat the object of conferring such powers. We do not say it has no limits, but only that they are far beyond the boundaries to which this contract leads.

The power of the director to make the contract on the part of the defendants, depends upon the by-laws of the corporation, which are the statutes limiting and defining the powers of all private corporations, with one qualification, that they be not inconsistent with their several charters. The director, who made this contract, was the sole director for the year. By the by-laws, he had authority ' to make all ' necessary contracts, on behalf of the corporation, for the pur- ' pose of carrying into effect the objects of the grant.' He had, in express words, during his term of office, the entire power of the corporation, which, we have considered, was sufficient for the purpose of making this contract.

There are two other points in the case, upon which we have had more difficulty. We do not perceive how there was any very satisfactory evidence of the loss of the original written contract. It is true search was made where this contract would most likely have been, but there was no legal evidence that the contract ever was in fact in either of the places where search was made. It is true, too, that what purported to be a copy of it was found on the town books, in the hand-writing of the clerk, perhaps. But the clerk was not called to verify the copy, upon oath. If he had been,

Windsor.
February,
1842.

Royalton
v.
R. and W.
Turnpike Co.

very likely some clew might have been gained of the present existence, or of the loss, or destruction of the paper. But surely the town clerk could not authenticate the copy of the contracts of the town, by recording them, any more than he could the contracts of other persons. The transcript on the town books was in no sense a record. It afforded no legal evidence of the existence even of the original, much less of. its place of deposit, or custody. Mr. Edgerton clearly could not, from memory merely, verify this copy. It was not then shown to be a copy. No legal proof was offered to show that search had been in fact made for this paper where it had ever been. And still such circumstances were developed as would render it desirable that inquiry should be made of the town clerk, at least, if his testimony could be had. As this defect in the trial is upon a point not always very material to the merits of the controversy, and when this case could not form a rule for another, as all such questions must depend mainly upon their own circumstances, we might have possibly been inclined to get along with it if it were not for the insuperable difficulty in regard to the rule of damages given to the jury.

The rule of damages, in this case, should have been to give the plaintiffs the difference between what they were to pay the defendants and the probable expense of performing the contract, and thus assess the entire damages for the remaining twelve years. This is a plain and obvious rule, and one not very difficult to explain to the comprehension of a jury. In looking into the charge of the court below, it is not easy to say precisely what rule the court did intend to lay down. It is certain it is not the one now given. In one particular it would seem to have been more favorable to the defendants than it should have been, of which they cannot complain; but, in another point, it might operate seriously against them. I mean the jury being instructed to take into the account, in assessing damages, that the defendants had laid their road across the plaintiffs' bridge at another place of the river. It is not explained how this was expected to affect the damages. It is of course uncertain how it did affect them in the mind of the jury. And as it is certain, from the present state of the case, that this circumstance lay wholly out of the range

of the proper inquiry, in relation to damages, the judgment is reversed, and a new trial granted.