G. W. HALE AND E. O. HALL v. J. A. S. TROUT
AND GEORGE MORGAN.

SUIT FOR BREACH OF CONTRACT.—A. and B. enter into a contract, by which A. is to manufacture for B. a given amount of lumber by a given time, for which B. is to pay a fixed price per thousand, payable at the end of each month, and B., without fault on A.'s part, refuses to pay for lumber sawed and received, and to receive any more lumber, and declares the contract at an end: *Held*, that A. may treat the contract as wholly broken by B., and sue to recover the contract price for the lumber delivered, and upon the breach to recover the entire damages resulting from the breach of the contract, without waiting for the time of performance to elapse.

RULE OF DAMAGES FOR BREACH OF CONTRACT.—When a party who contracts with another to make lumber for him, and to pay him a fixed sum therefor monthly, as the lumber is made, breaks the contract, without any fault on the other's part, the rule of damages for the breach is the difference between the cost of making the lumber and the contract price.

BREACH OF CONTRACT.—If one contracts to make merchantable lumber for another, and the other takes away unmerchantable lumber, contrary to the wish and orders of the maker, this is not a breach of the contract on the part of the manufacturer.

CONSTRUCTION OF CONTRACT.—Where A. contracted with B. to make for him at

his mill two million feet of lumber, and commence before July 20th, 1866, and make from fifty to eighty thousand feet per month, and to deliver on or before January 1st, 1867, at least three hundred thousand feet; and to commence on or before May 20th, 1867, and deliver from eighty to one hundred and fifty thousand feet per month, until one half of what is not delivered is sawed and delivered; and to commence on or before May 20th, 1868, and saw and deliver at least eighty and not to exceed one hundred and fifty thousand feet per month, until the two million feet was delivered: *Held,* that the true construction of the contract is, to deliver three hundred thousand feet before January 1st, 1867, at the rate of not less than fifty thousand feet per month; and to deliver not less than eighty thousand feet per month, commencing May 20th, 1867, and continuing until one half of the two million feet undelivered is delivered; and to further deliver at least eighty thousand feet per month, commencing May 20th, 1868, until all is delivered.

MEASURE OF DAMAGES.—Where one of the parties to a contract, the performance of which extends through a length of time, refuses to fulfill on his part, and declares the contract at an end, the other may sue for and recover as damages the profits he could have made by the fulfillment of the contract, without waiting for the time to expire.

APPEAL from the District Court, Fifth Judicial District, Tuolumne County.

The facts are stated in the opinion of the Court.

*Caleb Dorsey,* for Appellants.

As there was no breach of the contract on the part of the plaintiffs, as found by the Court both in the findings of fact and in the conclusions of law, it is clear from the facts found by the Court that the defendants violated the contract, and are responsible to plaintiffs for whatever damages they have sustained in consequence of the violation of said contract. The only question remaining to be discussed is, what are those damages? The Court finds that the cost of manufacturing said lumber was six dollars per thousand, and the net profits on said lumber to plaintiffs were four dollars per thousand feet.

It further finds, that of the two million feet of lumber specified in said contract, there yet remains undelivered one million five hundred and seventy-six thousand one hundred and ninety-nine feet. The rule of damages in such cases is, the profits the plaintiffs would have made after deducting

the expenses of manufacturing, etc. (*Cutter* v. *Powell*, 2 Smith's L. Cas. 44; *Cunningham* v. *Dorsey*, 6 Cal. 20; Sedgwick on Damages, 220, 221.)

The Court found the net profit to be four dollars per thousand. The amount of damages, then, to which plaintiffs were entitled was four dollars on one million five hundred and seventy-six thousand one hundred and ninety-nine feet of lumber not yet delivered, which amounts to the sum of six thousand three hundred and four dollars and seventy-nine cents. It is clear from the facts found, that the Court evidently erred in not finding the conclusions of law that plaintiffs were entitled to these damages.

The Court in the conclusions of law on the facts found, stated that "neither party was entitled to a rescission of the contract." As far as the plaintiffs were concerned, they did not ask that the contract should be rescinded. Plaintiffs contended for the enforcement of the contract. The only claim that they could have for damages was on the ground that the contract should be enforced.

*H. P. Barber*, for Respondents.

The Court will perceive that this is a contract to saw and deliver *monthly* a certain quantity of lumber; the payments therefor are also to be made monthly, and a right of action in case of performance by one party and non-payment by the other, would accrue every month. The contract, according to its terms, would not be completed until some time in the year 1869, and at that time only would plaintiffs receive the entirety of their prospective profits of four dollars per thousand feet.

In cases of this kind plaintiff may sue either on the contract by a special complaint, or if he be entitled to rescind, he may sue in *indebitatus assumpsit* for the value of services performed under it. But if he sues on the contract, he can sue only according to the terms of the contract he sues on. Thus in this case he might, if suing on the contract, sue

either monthly, or wait until the expiration of the term provided by the contract, and sue for his entire damages. When plaintiff sues to enforce a contract, he must be governed by the terms of the contract, and cannot recover damages except as prescribed by the contract. The case of *Cutter v. Powell,* 2 Smith's Lead. Cases, appears clearly to sustain these positions: That in such case the plaintiff may sue immediately on the refusal of the other party to continue the contract, but in such case he can recover only a *quantum meruit* for services actually rendered under it; or he may elect still to consider the contract in existence, and recover his damages or prospective profits under it, but in such case he cannot sue until the time for payment thereof has arrived by the terms of the contract. (*Cutter v. Powell,* marg. pp. 18, 19, 20, 21, notes pp. 41, 43, 46, 48; *Planche v. Colburn,* 8 Bing. 14; *Hambleton v. Veere,* 2 Sandf. 196.)

The case of *Cunningham v. Dorsey,* 6 Cal. 20, cited by appellant, does not touch the point at all. The only question there mooted was as to the rule of damages—not as to the time when they were recoverable. Sedgwick on Damages contains nothing on the question here raised. As to this point, see also, *Rogers v. Parham,* 8 Cobb, Ga., 190; *Fowler v. Armour,* 34 Ala. 194; *Clark v. The Mayor,* 4 Comst. 338.

"Where a party to an executory agreement gives notice to the other of his determination not to perform, the party receiving the notice is entitled to damages up to that time, but not to prospective damages." (*Skinner v. Tinker,* 34 Barb. 333; *Watson v. Thibon,* 17 Abb. Pr. 184.)

We do not dispute the rule of damages that a plaintiff wrongfully prevented from completing his contract is entitled to recover his proven profits—but the time at which he can recover those profits is quite a different thing. We submit as legal propositions:

1. That a party wrongfully prevented from performing a contract may elect to rescind it, and sue immediately on a *quantum meruit;* in which case he can recover only the actual value of the services then performed; or,

2. He may elect to consider the contract as still existing, and sue on such contract for its breach; but in such suit he must recover according to the terms of the contract, and can only recover as damages such prospective profits as at the time of suit he would have been entitled to receive under the contract. He cannot recover in 1867 profits which would not have accrued to him until 1869. His cause of action for profits in such suit does not arise until the time when they would have been payable according to the terms of the contract. This gives plaintiff all he can ask; if the contract is a losing one for him, he elects to rescind, and sues on a *quantum meruit* for the value of his services, irrespective of the contract; if it is a profitable contract for him, he elects to consider it existing, and sues on it, but in such case he is bound by its terms as to the time of payments.

The language and meaning of the agreement is plain enough: that plaintiffs were to commence by July 20th, 1866, and to deliver at least fifty thousand feet per month until May 20th, 1867, after which they were to deliver at least eighty thousand feet per month. According even to their own statement, they failed in delivering this fifty thousand feet per month, falling short in the ten months seventy-six thousand feet. The defendants, then, were perfectly justified in refusing to continue the contract, and had the right to rescind it. (*Harris* v. *Bradley*, 9 Ind. 166; *Powell* v. *Sammons*, 31 Ala. 552; *Edwards* v. *Cochran*, 12 Iowa, 488; Chitty on Con. 813, and notes.)

*George Cadwalader*, for Appellants, in reply.

As we understand respondents' counsel, we were to disregard the assertion of his clients that we had broken the contract, and their notice to us that they would not receive or pay for any more lumber, and that we must still go on sawing eighty thousand feet a month, and bring a suit at the end of each month for the value thereof, and so on for the

period of nearly two years, until the remainder of the two million feet had been sawed. This would have necessitated about sixteen suits for the violation of an entire contract.

We do not think that the authorities cited by the learned counsel for respondents bear out his theory. Thus, *Clark* v. *The Mayor of New York*, 4 Comst. 338, states that where one party terminates a contract against the consent of the other contracting party, the latter "may bring an action for a breach of the contract, and recover as damages all that he may lose by way of profits in not being allowed to fulfill the contract."

The case of *Fowler* v. *Arman*, 34 Ala. 194, was one of a violated contract of service for a year, the compensation being paid monthly. The Court held that the plaintiff had the option to consider the contract as subsisting, and sue for each payment as it became due, or to consider it rescinded, and sue for unliquidated damages for its breach.

In *Planche* v. *Colburn*, 8 Bing. 314, the plaintiff recovered fifty pounds under these circumstances: He had agreed with the defendants to write for publication a work on ancient costumes and armor for one hundred pounds. The publication of defendants' library was abandoned, and also the contract between the parties, when plaintiff's work was about half done, and the jury allowed him fifty pounds, and the King's Bench refused to set aside the verdict.

The case of *Skinner* v. *Tinker*, 44 Barb. 333, merely decides that "a partnership that has no limit in respect to time may be dissolved by either partner at any time, but such a dissolution will not deprive the other party of any claim for damages which he has sustained prior to the dissolution."

The case of *Hambleton* v. *Veere*, 2 Sandf. 196, is not in Sandford's Superior Court or Chancery reports, and we do not know where it is to be found.

All that *Watson* v. *Thibou*, 17 Abb. 184, decides is, that "a plaintiff cannot be permitted to recover judgment upon

a cause of action not in existence at the commencement of his action."

We confess our want of ability to see in any case cited by opposite counsel such a doctrine advanced as he contends for. The terms of the violated contract only protect respondents as to the price. (*Cutter* v. *Powell*, 2 Smith's Lead. Cases, 47.) But not always. (*Cutter* v. *Powell*, 2 Smith's Lead. Cases, 48.) Otherwise the contract does not shield him—for by its violation he has renounced its protection.

The argument of respondents' counsel was undoubtedly intended to be that although the respondents had renounced it, and refused to receive or pay for more lumber, that still appellants should have kept the mill going, stacked the lumber, and let it rot, and brought suit for each refusal to pay according to the terms of the contract. But this is answered by *Shannon* v. *Comstock*, 21 Wend. 461.

By the Court, SAWYER, C. J. :

The plaintiffs, as parties of the second part, and defendants, as parties of the first part, entered into a contract containing the following covenants : " The parties of the second part agree to go upon said premises and take possession of all the personal property and mill, and to sell, manufacture, and deliver to parties of the first part two million feet of merchantable and clear sawed lumber, to be in length from twelve to twenty-four feet, and sawed to the order of the parties of the first part ; said orders to be furnished always in advance, and to include all the merchantable sawed lumber that comes from the saw, but to include only such dimensions as are usually sawed by mills in this vicinity for this market ; and for any extra size or dimension that may be required, to be paid for at an extra price. Said parties of the second part further agree to and with the parties of the first part to commence operations at said mill on or before July 20th, 1866 ; and to manufacture at least fifty thousand feet per month while they may occupy and use the

old mill, but to saw and deliver at least eighty thousand feet per month after the new mill (in contemplation) is completed, and to deliver to the parties of the first part on or before the 1st day of January, A. D. 1867, three hundred thousand feet, and not to exceed six hundred thousand feet of sawed lumber; and to commence on or before May 20th, 1867, and saw and deliver to parties of the first part, at least eighty thousand, and not to exceed one hundred and fifty thousand feet per month until one half of what may remain not delivered of the two million feet is sawed and delivered to parties of the first part; and to commence on or before the 20th day of May, A. D. 1868, and saw and deliver at least eighty thousand feet, and not to exceed one hundred and fifty thousand feet per month until the two million feet first mentioned are delivered to parties of the first part. Said parties of the second part are to have the privilege to erect a new mill upon any of the ground described above and to remove the same at the option of the parties of the second part. * * * And said parties of the first part covenant and agree to and with the parties of the second part to pay ten dollars per thousand feet for cutting, hauling, and sawing said lumber, payable at the end of each thirty days, at the mill, in United States gold coin, for all lumber sawed at the end of the month."

The plaintiffs entered upon the performance of their covenant, and before the 1st day of January, 1867, sawed and delivered to the defendants merchantable clear sawed lumber to the amount of three hundred and nineteen thousand five hundred and twenty-eight feet, in all respects as required by the contract, which lumber was received and paid for by defendants. During the months of April and May, and up to the 8th of June, 1867, the plaintiffs sawed and delivered to the defendants one hundred and four thousand two hundred and seventy-three feet of lumber which was received, but not paid for. Upon the 11th of June, 1867, in addition to the lumber so delivered to and hauled away by defendants, the plaintiffs had at their sawmill of merchantable clear

sawed lumber fifty thousand feet, and they so notified the defendants in writing, and, in writing, demanded that defendants should receive said fifty thousand feet of lumber and pay for the same. When plaintiffs so demanded that defendants should receive and pay for said fifty thousand feet of lumber remaining in said mill yard on the 11th day of June, 1867, the defendants notified the plaintiffs that they would not receive or pay for any more lumber under the agreement, as they believed the plaintiffs had broken said agreement, and that they, defendants, would hold said agreement at an end. They claimed that plaintiffs had failed to perform their agreement in delivering quantities of lumber neither merchantable, nor clear sawed, and that during the winter months of 1866–1867 plaintiffs had not sawed and delivered as much lumber as they were required to do by the terms of their contract. The defendants' teamsters loaded the lumber at the mill, and sometimes through carelessness, and sometimes willfully and intentionally, and against the orders, and without the knowledge and approval of the plaintiffs, took from the mill yard small quantities of lumber not merchantable or clear sawed; but the plaintiffs, when informed of the fact, stated to the defendants that plaintiffs did not wish defendants to take such lumber as was not merchantable or clear sawed, and did not expect defendants to pay for any such lumber that had been hauled from plaintiffs' mill to defendants' lumber yard.

This action is brought to recover the contract price of the lumber delivered, but not paid for, and damages for breach of the contract by the defendants in declaring the contract at an end, and refusing to receive any more lumber under it.

The Court, in addition to other facts stated, found the value of the lumber delivered, and not paid for, at the contract price (including a small amount furnished outside the contract), to be one thousand sixty-seven dollars and fifty-six cents; that the amount of lumber remaining to be delivered is one million five hundred seventy-six thousand feet; that the cost of manufacturing and delivering said

lumber to defendants would be six dollars per thousand feet in coin, and that the profits of manufacturing and delivering the said amount of lumber at the contract price would be six thousand three hundred four dollars and seventy-nine cents in coin. As conclusions of law from the facts found, the Court held that there was no breach by either party so as to entitle the other to rescind, and that plaintiffs were entitled to a judgment only for the amount found due for the lumber delivered and received. Plaintiffs appeal upon the judgment roll alone.

The defendants insist, that the facts found disclose a breach on the part of the plaintiffs, which justified them in declining to receive any more lumber, on the ground, firstly, that a portion of the lumber delivered was neither merchantable nor clear sawed; secondly, that plaintiffs had not manufactured and delivered the lumber as fast as the contract required.

We will dispose of these questions first. There is nothing in the first ground. The unmerchantable lumber hauled away by defendants' teamsters was taken by them of their own accord, and contrary to the express orders of the plaintiffs. Plaintiffs never desired or expected defendants to receive it, or pay for it as a part of the lumber called for by the contract, and so notified them. The plaintiffs were in no way responsible for the acts of defendants' teamsters in hauling it away.

Whether there is any force in the second ground relied on by defendants, depends upon the construction to be given to the covenant quoted, and this, it must be confessed, is somewhat obscure, not to say ambiguous. The defendants claim the construction to be, that plaintiffs are to manufacture and deliver not less than fifty thousand feet each and every month from July 20th, 1866, to May 20th, 1867, and at least eighty thousand feet per month thereafter. The District Court, however, held the covenant to be satisfied by a delivery of three hundred thousand feet before the 1st of January, 1867, at the rate of not less than fifty thousand feet per month from

July 20th, 1866; by a further delivery of not less than eighty thousand feet per month, commencing on May 20th, 1867, and continuing till one half of the lumber remaining undelivered in 1866 should be delivered; and by a further delivery of not less than eighty thousand feet per month, commencing on May 20th, 1868, and continuing until all the remainder should be delivered. And this, we think, upon a consideration of the entire contract, is the true construction. The first clause, it is true, if it stood alone, would lead to a different conclusion. It requires the parties of the second part " to commence operations at said mill on or before July 20th, 1866, and to manufacture at least fifty thousand feet per month while they may occupy and use the old mill, but to saw and deliver at least eighty thousand feet per month after the new mill (in contemplation) is completed." This, if there was nothing else, would require fifty thousand feet per month to be delivered, while the old mill was occupied, every month without intermission, and as clearly require eighty thousand feet per month every month, without intermission, after the completion of the new mill, till the whole two million feet should be delivered. Upon this clause of the covenant there could no more be an intermission in the delivery of the eighty thousand than in the fifty thousand feet per month. But there are added the following qualifications or limitations : " and to deliver to the parties of the first part on or before the first day of January, 1867, three hundred thousand feet of sawed lumber, and to commence on or before May 20th, 1867, and saw and deliver to the parties of the first part at least eighty thousand, and not to exceed one hundred and fifty thousand feet per month until one half of what may remain of the two million feet is sawed and delivered to the parties of the first part; and to commence on or before the 20th day of May, A. D. 1868, and saw and deliver to the parties of the first part at least eighty thousand feet * * * per month until the two million feet first mentioned is delivered to the parties of the first part." There are three resting points specified. There were to be deliv-

ered during the year 1866 not less than three hundred thousand feet, which is something over fifty thousand feet per month from July 20th. Then they were to *commence* again on or before May 20th, 1867, and deliver at least at the rate of eighty thousand feet per month till one half the balance should be delivered. This, at the lowest rate allowed, would not require the whole time till the next point of time for commencement, which is May 20th, 1868, and it might be delivered at the rate of one hundred and fifty thousand feet per month, which would give a period of several months during which time none would be required to be delivered; for it surely cannot be claimed under the covenant that after a delivery of one half of the lumber remaining to be delivered on May 20th, 1867, any further delivery could be required before May 20th, 1868. And we can see no reason why the covenant does not authorize an intermission after the delivery of three hundred thousand feet before the 1st of January, 1867, till May 20th, 1867, the next time "*to commence*," as well as after the delivery of half the remainder till May 20th, 1868, the third time "to commence." The fact seems to be that the time was arranged so that there need be no delivery during the later Winter months, when in that elevated region the deep snows or heavy rains might impede the manufacture of the lumber, and during which time there was less demand for it in the market. We are satisfied, upon the whole, that upon this point the District Court construed the covenant correctly, and upon this construction the lumber was delivered strictly in accordance with the requirements of the contract, and there was no breach on the part of the plaintiffs. There was nothing, then, to justify the defendants in declaring the contract broken by the plaintiffs, and declining to carry it out on their part, and their action in the premises was a breach of the contract on the part of the defendants themselves.

Conceding a breach to have occurred on the part of the defendants, it is claimed on their behalf, that the plaintiffs had but one of three courses to pursue: Firstly, to rescind the

contract and sue for the value of the lumber delivered; secondly, proceed to manufacture and tender the lumber, and sue upon the contract from month to month for a corresponding amount of the contract price; or, thirdly, proceed to manufacture and tender the lumber according to the terms of the contract, till the whole two million feet should be delivered or tendered, and then sue for the entire amount at once. And the Court below must either have adopted this theory, or have rendered judgment upon the hypothesis that the only breach on the part of defendants consisted in not paying for a part of the lumber delivered and accepted, and that such non-payment did not constitute a breach of the contract entitling the plaintiffs to damages beyond the price of the amount of lumber delivered and received, but not paid for. But if it be conceded that plaintiffs were entitled to go on manufacturing and tendering the lumber, and then sue for the contract price, as suggested, as to which there may be some doubt, (see *Clark* v. *Marsiglia*, 1 Den. 318; *Derby et al.* v. *Johnson et al.*, 21 Vt. 21,) it is clear, both on principle and authority, that the plaintiffs were entitled to pursue another course, the one adopted in this action—that is to say, to treat the contract as wholly broken by the defendants, and sue to recover, firstly, the contract price for the lumber actually delivered and received under the contract; and secondly, upon the breach to recover the entire damages resulting from the breach on the part of defendants in putting an end to and refusing to receive any more lumber under the contract.

It may be that the monthly payments called for by the contract were absolutely necessary to enable the plaintiffs to perform their covenants, and that without such payments it would have been impossible for them to proceed. It would require a large amount of capital for plaintiffs to proceed in the manufacture of lumber for a period of three years without receiving payments. Besides, they were compelled to erect and did erect a new mill for the express purpose of enabling them to fulfill their contract. It would be equally

31

onerous to be compelled to sue each month, and recover the amount of the several monthly payments at the end of a protracted law suit. They were not bound to do so under the terms of their contract. There was not merely a neglect of payment, but they were notified by the defendants that they should treat the contract as at an end, and would receive no more lumber under it. Defendants thereby prevented the plaintiffs from fulfilling their contract. The plaintiffs, after this, even if they would be justified in so doing, could not be required, as a condition precedent to obtaining adequate relief for the breach, to go on manufacturing lumber at the risk of finding no market for it, or of being unable to collect from the defendants the amounts that might become due under the contract. There was a total breach of an entire contract, and the plaintiffs were entitled to sue upon the breach immediately, and recover the entire damages resulting from it, without waiting for the time for full performance to elapse. The following authorities sustain this view: *Shaffer* v. *Lee*, 8 Barb. 415; *Masterson* v. *Mayor of Brooklyn*, 7 Hill, 61; *Clark* v. *Mayor of New York*, 4 N. Y. (4 Comst.) 343; *Royalton* v. *R. and W. Turnpike Co.*, 14 Vt. 311; *Derby et al.* v. *Johnson et al.*, 21 Vt. 22; *Jones* v. *Judd*, 4 N. Y. 414; *Phil., Wil. and Balt. R. R. Co.* v. *Howard*, 13 How. U. S. 313, 314, 344; *Fish* v. *Folley*, 6 Hill, 55; *Shannon* v. *Comstock*, 21 Wend. 460; *Seaton* v. *Second Municipality of New Orleans*, 3 La. An. R. 45; *Rogers* v. *Parkham*, 8 Cobb, Ga. 190; *Planche* v. *Colburn*, 8 Bing. 15; *Closman* v. *Lacoste*, 28 Eng. L. and Eq. 141.

The case of *Masterson* v. *Mayor of Brooklyn*, *supra*, was similar in principle to this. The suit was for breach of a contract, whereby the plaintiff covenanted to furnish for a specified price, all the marble required to build the City Hall in the City of Brooklyn, to be delivered from time to time, as required by the Superintendent, and paid for in instalments as the work progressed. After the delivery of something over fourteen thousand feet, which was paid for, the defendants suspended the work, and like the defendants in this case, "refused to receive any more materials from the plaintiffs,

though the latter were ready and offered to perform." At the time of the suspension of the work, the entire quantity of marble remaining to be delivered, in order to fulfill the contract, was about eighty-nine thousand feet. Plaintiff claimed, and, in an action for damages on the breach, was allowed to prove, against the objection of the defendant the difference between the cost of furnishing the marble and the contract price. This ruling presented one of the questions for determination on appeal, and it was decided in favor of the plaintiff. Mr. Chief Justice Nelson, in discussing the question, says: "When the contract, as in this case, is broken before the arrival of the time for full performance, and the opposite party elects to consider it in that light, the market price on the day of the breach is to govern in the assessment of damages. * * * If there was a market value of the article in this case, the question would be a simple one. As there is none, however, the parties will be obliged to go into an inquiry as to the actual cost of furnishing the article at the place of delivery." (7 Hill, 71, 72.) And this is what was done in the case now under consideration. And Mr. Justice Beardsley says: "The plaintiffs were not bound to wait till the period has elapsed for the complete performance of the agreement, nor to make successive offers of performance in order to recover all their damages. They might regard the contract as broken up, so far as to absolve them from making further efforts to perform, and give a right to recover full damages, as for a total breach." (*Ib.* 75.)

In the case of the *Town of Royalton* v. *R. and W. Turnpike Company*, there was a contract, by the terms of which the defendant covenanted to support and keep in repair, for the term of twenty years, a bridge which the plaintiff was bound to maintain, in consideration of which the plaintiff covenanted to pay the defendant the sum of twenty-five dollars per annum for the entire period of time. The defendant supported the bridge for a period of eight years, and then committed a breach by suffering it to go to decay, and refusing to support it longer. The suit was upon the contract

for the breach, and it was held that the plaintiff was entitled to recover full damages, covering the entire twelve years yet unexpired at the time of the commencement of the suit. The Court, by Redfield, J., say: "The rule of damages in this case should have been to give the plaintiff the difference between what they were to pay the defendant and the prob-able expense of performing the contract, and thus assess the entire damages for the remaining twelve years." (14 Vt. 324.) So in *Phil., Wil. and Bal. R. R. Co.* v. *Howard*, upon a contract for grading and doing certain work on a railroad, in which it was provided that, "in case the party of the second part at any time be of opinion that this contract is not duly complied with by the party of the first part, or that it is not in due progress of execution, or that the said party of the first part is irregular or negligent, then and in such case he shall be authorized to declare this contract forfeited, and thereupon the same shall be null." (13 How. 319.) Subsequently, on the statement of the engineer that the contract was "not in due progress of execution," after reciting that the party of the first part had not complied with the contract, it was by the company "resolved, that the said contract be and the same is hereby declared to be forfeited." (*Ib.* 313.) Plaintiff sued, and one of the breaches relied on was for "fraudulently declaring the contract forfeited, and thereby depriving plaintiff of the gains which would otherwise have accrued to him on the completion of the contract." (*Ib.* 314.) The Court instructed the jury to the effect that if the company annulled the contract, not for the reasons stated, but for the purpose of having the remaining work done cheaper than the contract price, the plaintiff was entitled to recover damages for the loss of profit sustained by the refusal of the company to permit him to finish the work contracted to be performed. In considering the rule of damages, the Supreme Court, per Curtis, J., say: "Actual damages clearly include the direct and actual loss which plaintiff sustains *propter rem ipsam non habitam*. And in case of a contract like this that loss is, among other things, the

difference between the cost of doing the work and the price paid for it.   This difference is the inducement and real consideration which causes the contractor to enter into the contract.   For this he expends his time, exerts his skill, uses his capital, and assumes the risks which attend the enterprise.   And to deprive him of it, when the other party has broken the contract, and unlawfully put an end to the work, would be unjust.   There is no rule of law which requires us to inflict this injustice.   *   *   *   We hold it to be a clear rule that a gain or profit of which the contractor was deprived by the refusal of the company to allow him to proceed with and complete the work was a proper subject of damages." (_Ib._ 344.)   In _Clark_ v. _Mayor of New York_, 4 New York, 343, the Court say: "But when the contract is terminated by one party against the consent of the other, the latter will not be confined to the contract price, but may bring his action for a breach of the contract, and recover as damages all that he may lose by way of profits in not being allowed to fulfill the contract; or he may waive the contract and bring his action on the common counts for work and labor generally, and recover what the work done is actually worth.   But, in the latter case, he will not be allowed to recover as damages anything for speculative profits, but the actual value of the work and materials must be the rule of damages.   *   *   *   If the party seeks to recover more than the actual worth of this work, in a case where he is prevented from performing the entire contract, he must resort to his action directly upon the contract."   And in _Jones_ v. _Judd_, 4 N. Y. 414, the Court say: "If the performance had been arrested by the act or omission of the defendants, the plaintiff would have had his election to treat the contract as rescinded, and recover, on a _quantum meruit_, the value of his labor, or he might sue upon the agreement and recover for the work completed, according to the contract, and for the loss in profits or otherwise which he had sustained by the interruption."

Now, what was done and what was said might be done in

the cases cited, is precisely what was done in the case under consideration. The plaintiff sued directly upon the contract, to recover the contract price for the lumber delivered and received, and directly upon the contract for the breach in declaring the contract at an end and refusing to take any more lumber under it. And the foregoing cases show that he may so sue and recover the whole damage sustained in consequence of the breach, without waiting for the time of performance to elapse or repeating an offer to perform from month to month, as the time for delivery arrives, and that the rule of damages upon the breach is the clear profit which the plaintiff would have made, that is to say, the difference between the contract price and what it would have cost the plaintiff to manufacture and deliver the lumber according to the terms of the contract.

The cases cited by defendants are not in conflict with the authorities referred to in this opinion. Most of them do not touch the precise question, and are therefore not in point. The case of *Rogers* v. *Parham*, 8 Cobb, 190, is against the respondents, and sustains the views here taken. The same may be said of *Girard* v. *Taggart*, 5 S. & R. 19, so far as it bears upon the question. There was a sale of teas at auction, to be paid for in sixty, ninety, and one hundred and twenty days, the purchaser, on delivery of the teas, to give notes with approved indorsers. The purchaser finally refused to take the teas or give the notes. Thereupon the vendor sold the teas again at a much lower price, and sued at once to recover the difference. In the language of the Chief Justice, the action was " *special, on the breach of the contract.*" Upon the question as to when the action could be brought, and the measure of damages, Mr. Justice Gibson said : " The breach having put an end to every idea of further performance by either, is a violation of the contract in all its parts, for which the seller may recover whatever damages he can prove he has sustained. The buyer, after having disaffirmed the sale, so far as he could by acts of his own, must not be permitted to treat the contract as still existing for the purposes of being

performed by him specifically. *But the seller may, if he please, consider it existing only for the purpose of giving a remedy for the breach."* (5 S. & R. 33 ) See also opinion of Mr. Justice Duncan in same case (*Ib.* 543;) also *Derby et al.* v. *Johnson et al.*, 21 Vt. 22. Some principles stated in *Fowler* v. *Armour*, 24 Ala. 194, seem to be favorable to respondent's view, but if so they are wholly against the current of authorities brought to our notice.

In this case the difference between the contract price and cost of performance, or the clear profits upon the amount of lumber remaining undelivered, the Court found to be six thousand three hundred four dollars and seventy-nine cents, which sum should have been added to the amount for which judgment was rendered.

Judgment reversed, and the District Court directed to enter judgment upon the findings in accordance with the views expressed in this opinion.