[L. A. No. 1228.   Department One.—July 8, 1904.]

## J. A. COBURN and J. C. BLAKE, Respondents, v. CALIFORNIA PORTLAND CEMENT COMPANY, Appellant.

Appeal—Order Denying New Trial—Review.—Upon appeal from an order denying a new trial, the sufficiency of the complaint and the sufficiency of the findings to sustain the judgment cannot be considered.

Contract for Clay Suitable for Cement—Breach—Measure of Damages.—Upon breach of a contract to take all of the clay on the lands of the plaintiffs which was suitable for the manufacture of cement, where the clay left in plaintiffs' land has no recognized market value, the measure of damage is the contract price per cubic yard of the unextracted clay, less the cost per cubic yard of extracting it.

Id.—Unsuitableness of Clay for Cement—Mixture with Other Clay—Certificate of Chemist—Acceptance of Part—Refusal of Remainder.—Where the clay in plaintiffs' land was not "suitable for the manufacture of cement," as stipulated, the fact that its suitability was to be determined by defendant's chemist, who certified that it was not so suitable, if not mixed with a different clay, and the subsequent delivery and acceptance of part of plaintiffs' clay, which was mixed with other clay without satisfactory results, the delivery of which was discontinued as soon as a more suitable clay was found, do not indicate that the contract was for the purchase of plaintiffs' clay to be mixed with other clay; and the acceptance of part of the unsuitable clay so delivered, and payment therefor, did not preclude the defendant from refusing to accept the remainder.

APPEAL from an order of the Superior Court of San Bernardino County denying a new trial.   Frank F. Oster, Judge.

The facts are stated in the opinion of the court.

Walter Rose, Ross T. Hickox, and A. R. Metcalfe, for Appellant.

H. C. Rolfe, and F. B. Daley, for Respondents.

ANGELLOTTI, J.—This action was brought to recover damages alleged to have been suffered by plaintiffs by reason of the alleged failure of the defendant to comply with the

terms of a contract entered into by it with plaintiffs. Plaintiffs had judgment for $6,397.50, and defendant appealed from the judgment and from an order denying its motion for a new trial. The appeal from the judgment has heretofore been dismissed for the reason that it was not taken within six months after the entry of the judgment. Upon the appeal from the order denying the motion for a new trial the questions suggested in defendant's closing brief as to the sufficiency of the complaint, and as to whether the findings sustain the judgment cannot be considered. (*Swift* v. *Occidental M. and P. Co.,* 141 Cal. 161, 165; *Sharp* v. *Bowie,* 142 Cal. 462.)

It is contended that the evidence is, in several particulars, insufficient to sustain the findings of the trial court.

By the contract between the parties, the defendant agreed to take all the clay on the lands of plaintiffs, "that is suitable for the manufacture of cement, the fact of its being suitable to be determined by the chemist of the party of the first part" (defendant). Plaintiffs agreed to deliver the clay at the rate of eighteen to twenty cubic yards per day, or as directed, and the price fixed was one dollar per cubic yard, all clay delivered during any month to be paid for on or before the twenty-fifth day of the succeeding month.

The contract was executed January 25, 1896, and the parties acted thereunder until June 30, 1900, plaintiff delivering clay and defendant accepting and paying for the same, when defendant refused to accept further clay and notified plaintiffs that it would not take or pay for any more of said clay, and has ever since continued to refuse to accept any of the same. Claiming that this constituted a breach of the contract on defendant's part, plaintiffs brought this action, alleging that there remained on their land more than twelve thousand cubic yards of clay, suitable for the manufacture of cement, which the defendant refused to accept or pay for, and that the cost or expense of delivering the same does not exceed fifty cents per cubic yard.

They further alleged great damage and injury to their premises by reason of the removal of the clay already delivered, and the necessary excavations and preparations for the delivery of the remaining clay, but there is no evidence in the record which would warrant the allowance of any sum on this account.

The court found all the allegations of the complaint to be true, and found that by reason of defendant's failure and refusal to comply with its contract the plaintiffs had been damaged in the sum of $6,397.50, evidently basing its finding as to the amount of damage upon the testimony of a witness for plaintiffs, who testified that there remained on the land eight thousand five hundred and thirty cubic yards of clay in place, the uncontradicted evidence to the effect that it was the intention of the agreement as shown by the conduct of the parties thereunder that the clay should be paid for "by cubic yard as delivered in the wagon-bed," the evidence that one cubic yard in place on the ground was equivalent to one and a half cubic yards in the wagon-bed, the evidence that the cost to plaintiffs of taking out and delivering the clay was only fifty cents per cubic yard, the evidence of one of the plaintiffs to the effect that he knew of no other market for the clay, and the evidence of one of the plaintiffs to the effect that the damage to the ground by reason of the taking out of the clay already delivered is much greater than it would be if all the clay was taken out.

The case thus presents a somewhat peculiar situation, in that the plaintiffs, while retaining their land intact, are allowed to recover from the defendant the full contract price per cubic yard of the clay in place, less only the cost of excavating and delivering the same, the value of the clay in place being excluded from consideration upon the theory that there was no other market for the clay, and that the damage to the ground by reason of the taking out of the clay already delivered is greater than it would be if all the clay were taken out.

Such a situation might, however, exist, under well-recognized rules of law. It is true that the measure of damages in actions of this character where the property has not been sold is, generally, the difference between the price fixed by the contract and the market value of the goods at the time and place of delivery. Our code provides that in such cases the detriment is deemed to be "the excess, if any, of the amount due from the buyer, under the contract, over the value to the seller, together with the excess, if any, of the expenses properly incurred in carrying the property to market, over those which would have been incurred for the carriage thereof,

if the buyer had accepted it." (Civ. Code, sec. 3311, subd. 2.)

Where, however, there is no value, or where under the terms of the special contract the market value is not an appropriate or adequate criterion of damages, it has been said that the measure of damages is compensation for the actual loss suffered. (See 24 Am. & Eng. Ency. of Law, 1115, 1116, 2d ed.) The law seeks to give the complaining party the value of his bargain—to prevent a loss which the fulfillment of the contract would have prevented—to put the injured party, so far as money can do it, in the same position as if the contract had been performed. (8 Am. & Eng. Ency. of Law, 632.) Accordingly, the contract price less the cost of performing the contract was held to be the proper measure of damages where the buyer refused to take all the tomatoes grown on a certain tract of land, it appearing that there was no other market for the tomatoes. (*Indiana C. Co.* v. *Priest*, 16 Ind. App. 445. See, also, *Silkstone etc. Co.* v. *Joint Stock Co.*, 35 L. T. (N. S.) 668; *Tobb* v. *Gamble*, 148 N. Y. 382; *Alleghany Iron Co.* v. *Teaford*, 96 Va. 372.)

If it is more to the detriment than to the benefit of plaintiffs' land to allow the clay in place to remain thereon and if there be no other market for the clay, as to both of which elements there is some evidence, perhaps sufficient in character to support a finding, it would appear that the difference between the contract price and the cost of performing the contract, for all clay on plaintiffs' land which should, under the terms of the contract, have been accepted and paid for by defendant, would be a measure of damage of which the defendant could not complain.

The main question on this appeal is, in our judgment, as to whether plaintiffs sufficiently showed that there was any clay remaining on their land, which, under the terms of the contract, defendant was bound to accept.

This question must turn upon the proper construction of the contract of the parties, particularly that portion thereof describing the property contracted for. The defendant agreed, in effect, to take only such clay as is "*suitable for the manufacture of cement,*" and expressly stipulated that the fact of its suitability is "to be determined by the chemist of the party of the first part" (defendant).

The evidence shows, without conflict, that none of the five thousand yards and more of clay that have been delivered by plaintiffs was "suitable for the manufacture of cement," in the sense that it could be advantageously used without mixing it with other clay, and there is no claim that any of the undelivered clay is different in this respect from that delivered. If this were all, we should unhesitatingly say that the undelivered clay does not come up to the requirements of the contract, and that defendant was under no obligation to receive the same. The stipulation for such clay as "is suitable for the manufacture of cement" would mean only such clay as was by itself suitable so far as clay was an ingredient of the cement to be manufactured, and would not include such clay as could only be used in connection with other clay, which might be elsewhere procured.

It, however, appears that at the time the contract was entered into an experiment had been made by the chemist of the defendant with some of plaintiffs' clay, and it had been found that the clay so examined was not by itself, so far as clay was to be used as an ingredient, suitable for the manufacture of cement, and this fact was made known to the officers of the corporation defendant. It is therefore contended that the defendant was not stipulating for such a clay, but only for a clay that when mixed with other clay could be advantageously used in making its cement. But it further indisputably appears that at the time of the execution of the contract no experiment had been made in mixing this clay with other clay, and that it was not known that it could be advantageously so mixed. All that was then known was, that the single portion experimented upon was not, by itself, suitable.

It does not appear that defendant had any information at all as to the remaining clay on plaintiffs' land. So we cannot find warrant in the language of the contract and the circumstances surrounding the execution of the same for holding that the contract contemplated the purchase of clay that was suitable only to be used in connection with other clay.

The defendant, without knowledge as to what use it could make of plaintiffs' clay, knowing only that the portion experimented on was not by itself suitable, and having made no experiment by mixing, was simply willing to agree, and did

agree, to purchase all the clay *that was in fact suitable,* and still further indicated that the question of suitability as to any of the clay had not been finally determined by inserting a provision that the question of suitability was to be determined by its own chemist.

The acceptance and use of clay delivered by plaintiffs under this contract for a period of over four years, during which some five thousand cubic yards were delivered, does not, under the circumstances, materially affect the question. It appears from the evidence of the chemist, who was the only witness as to the quality of the clay delivered, that the clay was never satisfactory, but that it was ascertained some six weeks or so after the execution of the contract that, by mixing clay delivered by plaintiffs with another clay procured from Riche Cañon, a clay could be produced that might be held suitable for the manufacture of cement, but the evidence of this witness clearly indicates that he never considered even this mixture suitable, and continued the use of it only because no more satisfactory clay could be found. Finally, when a clay had been discovered that was, by itself, suitable, defendant notified plaintiffs that it would take no more clay. Under these circumstances, it was the good fortune rather than the right of plaintiffs that the defendant continued to use the clay for so long a period to plaintiffs' profit.

If plaintiffs' clay was not "suitable for the manufacture of cement" within the meaning of the contract, the acceptance of the part delivered did not preclude defendant from refusing to accept the remainder. (*Cook* v. *Branders,* 3 Met. (Ky.) 555; *Hollifield* v. *Black,* 20 Mo. App. 328; *American B. and B. Co.* v. *Oakes,* 64 Mo. App. 235; *Visscher* v. *Greenbank Co.,* 11 Hun, 159; *Cahen* v. *Platt,* 69 N. Y. 348;[1] *Hubbard* v. *George,* 49 Ill. 275.) As was said in the first of the cases noted, the acceptance of a part was not an acceptance of the whole, and the defendant was only bound to receive an article of the quality stipulated, and was not answerable for any damages resulting solely from its refusal to receive an article of inferior quality.

The burden was on the plaintiffs in order to sustain a cause of action for damages caused by the refusal of defendant to accept the remaining clay to show that such remaining clay

---

[1] 25 Am. Rep. 203.

came up to the requirements of the contract. There was, in our judgment, no evidence to sustain the finding to this effect. The order appealed from is reversed.

Shaw, J., and Van Dyke, J., concurred.

Hearing in Bank denied.