[L. A. No. 8501. In Bank.—December 29, 1927.]

WILLIAM A. SOBELMAN et al., Respondents, v. ED. R.
MAIER et al., Appellants.

(1)

Edward F. Wehrle and Anderson & Anderson for Appellants.

Goodwin J. Knight, Thomas Reynolds and Schweitzer & Hutton for Respondents.

PRESTON, J.—This is an action for damages for breach of a contract wherein plaintiffs agreed to manufacture, furnish, and sell to defendants certain specialties protected by

letters patent, and defendants were to receive and accept the same in certain amounts and at certain times and to pay for them as prescribed, which specialties were to be used in the making of an article of commerce known as "Cold Dogs." Plaintiffs had judgment and defendants have appealed. They have but little to urge as to the merits of plaintiffs' claims against them. Nevertheless they have urged much of a highly technical nature in other respects and this necessitates a special reference to the pleadings, evidence, and findings.

The complaint alleges that on the fourteenth day of July, 1922, plaintiffs entered into a certain written contract with defendants, together with Choco-Ice Company, a Minnesota corporation, which contract is set forth in full. It is executed by plaintiff Sobelman, as first party, plaintiff Rowe as third party, and the above company as fourth party, but is unexecuted by defendants as second parties. Also set forth in full in said complaint as a part of the above-mentioned contract and referred to therein is a written agreement as above mentioned dated June 23, 1922, between plaintiff Sobelman and defendants. This agreement is duly executed and provides for the purchase by defendants of stipulated numbers of ice-cream cones and cans during specified periods covering one year, with renewal privilege, at agreed prices, and for the sale thereof by plaintiff Sobelman, he being the sole licensee of Choco-Ice Company for exclusive manufacture and sale in all United States territory west of the Rocky Mountains of said so-called chocolate-coated ice-cream cones or shells and cans or containers for use in filling them.

It developed that plaintiff Sobelman was not the owner of the patent for said cones and cans nor of the license for their exclusive sale in the territory mentioned, but derived all his rights in the subject matter of the contract from a certain document dated April 29, 1922, executed to him and also to plaintiff Rowe by Choco-Ice Company, the real patentee or licensee of the patentee. Said document of April 29, 1922, is not set forth in the complaint but was introduced in evidence on trial of the cause. After execution of the contract of June 23, 1922, defendants required plaintiff Sobelman to produce the document showing his authority in the premises. This he did, securing a copy of said writing of April 29,

1922, and immediately thereafter, in order to satisfy defendants and prevent any misunderstanding, the contract of July 14, 1922, was drafted and executed as first above set forth. The purpose of said contract was to define the rights of the respective parties under the various agreements and to assure defendants in some of the covenants in their favor in said contract of June 23, 1922. It contains also plaintiff Rowe's ratification of the agreement of June 23, 1922, in so far as his interests are affected thereby and likewise the Choco-Ice Company's ratification thereof. It further provides for a slightly different division of profits and for a certain method of accounting, all to the distinct advantage and benefit of defendants.

After setting forth said agreement of July 14, 1922, the complaint further alleges, in paragraph II thereof, that by its terms defendants agreed to purchase from plaintiffs 50,000 cones per day or 300,000 per week; 1,000 cans immediately upon execution of the contract, and 800 cans per month from July 1, 1922, to October 1, 1922, and agreed to pay for said cones at the rate of $12.50 per thousand and for said cans at the rate of $7 each; that defendants failed to comply with or conform to the terms and conditions of said agreement in that they failed to purchase more than 923,300 shells up to September 12, 1922, and only purchased 770 cans; that plaintiffs were at all times ready, willing, and able to carry out their part of the agreement, wherefore they prayed judgment against defendants in the sum of $14,646.75 as damages suffered from the breach of the contract.

Defendant Maier filed a separate answer, practically identical with the amended answer of defendants Sugar and Fink, which admits execution of the contract of June 23, 1922, but denies that said defendants entered into the alleged contract of July 14, 1922, or became obligated thereunder. Said amended answer also denies their failure to comply with any of the terms or conditions of said agreement of June 23, 1922, and contains six additional and separate defenses, one claiming a waiver of the right to sue for damages by reason of a written notice dated September 12, 1922, of rescission and termination of said contract of July 14, 1922, signed by plaintiffs, charging defendants and each of them with failure to make the purchases agreed upon and notifying

them that plaintiffs hold them responsible in damages therefor, and the other separate defenses alleging various false and fraudulent representations made to defendants by plaintiff Sobelman as to the following matters: The amount of ice-cream necessary to fill the cones and the profit to be made from sale thereof, said misrepresentation resulting in the loss to defendants of at least $10,000; as to the ability of the licensee and patentee to manufacture and deliver the cones called for by the agreement; as to the grade of milk chocolate used in the manufacture of said cones; as to the territory for which said plaintiff Sobelman was sole licensee; as to the furnishing of tinfoil wrappers for the cones appropriately labeled ''Choco-Ice'' and ''A Cold Dog,'' which wrappers were never received.

The trial court found against defendants on all issues and in favor of plaintiffs awarding them damages in the sum of $5,966.75. With reference to the several agreements it found that plaintiffs and defendants entered into the agreement dated June 23, 1922, attached to and referred to in the agreement of July 14, 1922, set out in paragraph one of plaintiffs' complaint; that after the execution of said contract of June 23, 1922, at the instance of defendants, plaintiffs secured the execution of said agreement of July 14, 1922, and thereafter all parties to the agreement of June 23, 1922, continued to operate thereunder and at no time did defendants or any of them ever repudiate or disclaim any responsibilities under the agreement of June 23, 1922, or July 14, 1922.

Appellants insist that plaintiffs are declaring on the contract dated July 14, 1922, to which appellants are not parties; that at most the contract of June 23, 1922, is in the case as a part of said unexecuted July contract. They also insist that plaintiff Sobelman alone was a party to the contract of June 23, 1922, and the presence in the case of plaintiff Rowe conclusively shows a reliance upon the July contract and the insertion of this additional name as plaintiff is an added reason why the complaint on its face does not state a cause of action. There is no substantial merit in appellants' position in this behalf. The gravamen of the charge in the complaint and the issue that was tried was a breach of the agreement on the part of defendants to purchase and pay for the goods as manufactured and the dam-

ages sustained by plaintiffs for such breach during the period of time from the beginning of the contract until September 12, 1922. The amended answer of the defendants admits a contract to purchase as alleged in paragraph II of the complaint and it was admitted on the trial that only 923,300 shells and 770 cans were accepted and paid for; therefore, no prejudicial injury could have been suffered on their part by a reference to the wrong contract. In fact, the original answer of defendants Sugar and Fink not only admitted the execution of the contract as alleged but in legal contemplation admitted a breach thereof. Furthermore, the evidence shows clearly, as found by the court, that the provisions of the July contract were for the benefit of appellants and the contract was the result of the efforts of the then attorney for appellants or some of them to strengthen their position under the June contract, and for this reason also no harm resulted to them on account of reliance by plaintiffs upon the July contract. ■ The presence of Oliver A. Rowe as plaintiff was proper as it developed that appellants well knew that he had an interest in the June contract and he was, therefore, a proper party to the action for damages for its breach. His connection with the matter was repeatedly brought home to appellants as he was an active participant in the dealings with them under the contract. Besides, even if he were not a proper party, no advantage could be taken of that situation now in the absence of a special demurrer to the complaint upon that ground.

■ In this connection appellants complain of the finding made by the court that ''by mutual consent, plaintiffs did not furnish and defendants did not buy the stipulated number of shells or cones from June 23, 1922, to July 15, 1922,'' insisting that no evidence can be found in the record to support this finding and that but for the default of plaintiffs in this behalf, appellants would have been able to secure one purchaser for all the product purchased from plaintiffs. After the contract of June 23, 1922, was executed, appellants, acting through an attorney, in effect advised plaintiffs that it was unsafe to proceed under it and set about procuring another contract, of which efforts the contract of July 14, 1922, was the result. As long as appellants were dissatisfied with the provisions of the contract of June 23, 1922, and

were active in securing the contract of July 14, 1922, this situation positively implied to plaintiffs that active production under the contract might be held in abeyance pending termination of the proceedings set on foot by appellants themselves. In other words, the circumstances and acts of the parties clearly show a tacit, if not express, agreement that deliveries under the contract would be held in abeyance awaiting execution of the July contract; moreover, the parties continued to do business with each other after July 15, 1922, and this too would authorize the finding. In view of this situation we need not discuss the sharply contested issue as to whether or not appellants lost a customer for their whole output and were thereby damaged for obviously under this finding plaintiffs would not be answerable for any loss even in the event such claim was sustained. Nor need we pause to consider whether in any event damages for such a claim could be collected.

The finding of the court that appellants breached their contract has ample support in the evidence and such evidence need not be here reviewed. The damages claimed by plaintiffs only extend over the period beginning with the contract and ending September 12, 1922. The record would have well warranted even greater relief than was granted by the court below.

There is no merit whatever in the contention that by the written notice served September 12, 1922, plaintiffs waived their claim to damages. The court finds that on September 9th a written demand reciting past breaches of the contract was served upon defendants and in it was a notice that damages would be claimed for failure to live up to the covenants thereof. The second writing was in legal effect, although unhappily worded, a notification to appellants that they had breached the contract; that on that account a termination thereof was declared, expressly stating, however, their election to hold appellants responsible in damages for their said failure to fulfill the contract up to the date of the notice. No claim is made for subsequent damages and hence no reason exists for the application of the rule laid down in such cases as *Lemle* v. *Barry,* 181 Cal. 1 [183 Pac. 150], *House* v. *Piercy,* 181 Cal. 247 [183 Pac. 807], and *McCready* v. *Bullis,* 59 Cal. App. 286 [210 Pac. 638]. In this action plaintiffs are standing upon

the contract and could at least hold appellants liable for all damages accruing prior to service of the notice. ■ "One who has been injured by a breach of contract has an election to pursue any of three remedies. He may treat the contract as rescinded and may recover upon a *quantum meruit* so far as he has performed; or he may keep the contract alive for the benefit of both parties, being at all times ready and able to perform; or third, he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing." (*McConnell* v. *Corona City Water Co.*, 149 Cal. 60, 64, 65 [8 L. R. A. (N. S.) 1171, 85 Pac. 929]; see, also, *Robinson* v. *Rispin*, 33 Cal. App. 536, 539 [165 Pac. 979].)

■ Just how the court arrived at the award made does not appear clearly but it does appear that the profit from the cones would have been approximately $2.50 per thousand; that the number of cans refused was approximately 2,630, and that the profit upon them would have been about $3.50 each. These figures would have sustained a much larger award than was made by the court, therefore, appellants are in no position to complain of the award or of the lack of evidence to support it. The rule of damages in a case like this is not in doubt.

■ It is stated in *Fountain* v. *Semi-Tropic Land & Water Co.*, 99 Cal. 677, 680 [34 Pac. 497, 498], as follows: "If, however, the breach be of a covenant, the non-performance of which will render it impossible for the other party to perform, or will frustrate the whole purpose of the contract on his part . . . he may decline to proceed in performance and sue for damages, in which case he may recover all loss occasioned by the breach—including profits he would have made if the contract had been performed. . . . " '

Sutherland on Damages (vol. 1, p. 113, 1st ed.) announces the same rule as follows: "A party to a contract is entitled to recover, against the other party who violated it, damages for the profits he would have made out of it had it been performed. It is no objection to their recovery that they cannot be directly and absolutely proved. In the nature of things, the defendants having prevented such profits, direct and absolute proof is impossible." (See, also, vol. 1, p. 243, 4th ed., Sutherland on Damages.)

*Coburn* v. *California etc. Co.*, 144 Cal. 81, 84 [77 Pac. 771, 772], states the general rule as follows: ''Where, however, there is no value, or where under the terms of the special contract the market value is not an appropriate or adequate criterion of damages, it has been said that the measure of damages is compensation for the actual loss suffered. (See 24 Am. & Eng. Ency. of Law, 1115, 1116, 2d ed.) The law seeks to give the complaining party the value of his bargain—to prevent a loss which the fulfillment of the contract would have prevented—to put the injured party, so far as money can do it, in the same position as if the contract had been performed. (8 Am. & Eng. Ency. of Law, 632.) ''

In *Hale* v. *Trout*, 35 Cal. 229, 246, where plaintiff contracted with defendant to manufacture and deliver lumber for him at a certain price and defendant breached the contract, plaintiff being without fault, it was said: '' . . . that the rule of damages upon the breach is the clear profit which the plaintiff would have made, that is to say, the difference between the contract price and what it would have cost the plaintiff to manufacture and deliver the lumber according to the terms of the contract.''

In *Upstone* v. *Weir*, 54 Cal. 124, 126, plaintiff agreed with defendant to furnish certain iron-work at a stipulated price. Plaintiff furnished less than the specified amount, due to failure of defendant to receive it. The rule of damages was there stated to be: ''The plaintiff, having sued upon the contract, is entitled to recover for the iron-work furnished, such a proportion of the whole contract price as the quantity which he furnished bears to the whole quantity contracted for; and in addition to that, the profit which he would have made, if he had been allowed to complete his contract, together with the damages he incurred in providing means for furnishing the residue of the iron-work called for by the contract, but not delivered, because of the defendants breach.''

In *Tahoe Ice Co.* v. *Union Ice Co.*, 109 Cal. 242 [41 Pac. 1020], a contract by defendant to take the whole output of ice of plaintiff for a period of years was claimed to have been breached by defendant and the court approved the rule of damages applied in *Hale* v. *Trout, supra*, but held the rule inapplicable to this case because of the sale elsewhere by plaintiff of the ice produced for defendant.

In *Ahlers* v. *Smiley*, 163 Cal. 200, 205 [124 Pac. 827, 829], an action for breach of a contract wherein defendant agreed to purchase from plaintiff all the ice needed for his customers, the rule of damages was stated as follows: "It was shown that the capacity of the ice plant was sufficient to supply all of defendants' wants, and that the ice for their use could be produced at an added cost to plaintiffs of twenty-five cents per ton and, therefore, at a profit of $3.75. The loss of this sum per ton on six hundred tons made the aggregate amount of damages two thousand two hundred and fifty dollars. Section 1512 of the Civil Code is as follows: 'If the performance of an obligation be prevented by the creditor, the debtor is entitled to all the benefits which he would have obtained if it had been performed by both parties.' The judgment is in accord with this rule. The rule of damages in such cases is the difference between the cost of manufacture and the contract price (*Hale* v. *Trout*, 35 Cal. 229; *Winans* v. *Sierra Lumber Co.*, 66 Cal. 61 [4 Pac. 952]). Loss of profits which are the natural result of a contract and which the law implies from a breach may be recovered without allegations of special damage. (*Tahoe Ice Co.* v. *Union Ice Co.*, 109 Cal. 249 [41 Pac. 1020].)"

A similar principle is announced in the following cases: *Coburn* v. *California etc. Co.*, 144 Cal. 81, 84 [77 Pac. 771]; *Thompson* v. *Hamilton Motor Co.*, 170 Cal. 737 [Ann. Cas. 1917A, 677, 151 Pac. 122]; *Connell* v. *Higgins*, 170 Cal. 541, 549 [150 Pac. 769]; *Schuman* v. *Karrer*, 184 Cal. 50, 57 [192 Pac. 849]; *National etc. Mfg. Co.* v. *Producers R. Co.*, 169 Cal. 740, 745 [147 Pac. 963]. See note, 44 A. L. R., pp. 215–283.

█ The criticism directed against the sufficiency of the proof of cost of production and hence the proof of net profits from sale of the articles is a matter which should have been addressed to the judge of the court below, who passed upon the weight of the testimony. For we have no hesitation in saying that there is enough evidence to warrant a finding that the profit on the cones was approximately $2.50 per thousand. █ In this connection it should be noted that where a defendant breaches a contract, the law does not hold him faultless because of the difficulties that arise in proving the exact amount of detriment caused by him. "But where

the prospective profits are the natural and direct consequences of the breach of the contract they may be recovered; and he who breaks the contract cannot wholly escape on account of the difficulty which his own wrong has produced of devising a perfect measure of damages." (*Shoemaker* v. *Acker*, 116 Cal. 239, 245 [48 Pac. 62].)

We have considered the contentions of appellants with respect to their special defenses interposed herein and we have no hesitancy in saying that there is ample evidence to support the findings that these special defenses were not sustained by the proofs. The record is replete with other objections and contentions by appellants, all of which we have considered and none of which in our opinion have any merit whatsoever.

Judgment affirmed.

Curtis, J., Langdon, J., Richards, J., Waste, C. J., Seawell, J., and Shenk, J., concurred.