[Civ. No. 18368. Second Dist., Div. Three. Nov. 29, 1951.]

EBERLE SCHULTZ, Respondent, v. THE LOS ANGELES DONS, INC. (a Corporation), Appellant.

Betts, Ely & Loomis and Ronald G. Cameron for Appellant.

N. E. Youngblood for Respondent.

VICKERS, J. pro tem.—The plaintiff-respondent Schultz alleged in his complaint that on July 2, 1948, he and the defendant-appellant corporation entered into a written contract under which he agreed to play professional football for the appellant for the season of 1948 for which the defendant-appellant agreed to pay $8,000; that on July 14, 1948, he reported to the training camp of appellant; that on August 12, 1948, he was discharged without cause or justification by the appellant; that he had "done and performed any and all conditions and covenants on his part to be done and performed under said contract"; that on September 25, 1948, he notified the appellant that he was ready, able and willing to perform the services required under the contract; that the defendant failed and refused to permit such performance and that he was only paid $500 by respondent; and was thereby damaged in the sum of $7,500. By its answer the appellant admitted the execution of the contract and that respondent reported for training as alleged and was discharged; appellant denied that the termination was without cause or justification. Appellant's answer also admitted the receipt of the notification of September 25th and that there was no acceptance of respondent's

services thereafter, but denied performance of the contract by respondent and that there was damage to respondent. By its answer the appellant also pleaded a number of affirmative defenses among which were fraud on the part of respondent in failing to disclose that his physical condition, due to prior injury, was such as to make it impossible for him to perform as required by the contract and that, if in good physical condition, respondent could have obtained employment with another professional football club and received compensation equal to that called for by the contract.

From the transcript it appears that there was little dispute in regard to the evidentiary facts except as to the cause and extent of the physical disability suffered by the respondent. Respondent had been a professional football player for approximately seven years. During the 1946 or 1947 football seasons, while playing with the Los Angeles Rams, he was partially incapacitated from a back injury. On June 28, 1948, he was examined by appellant's physician, who reported to it that he was in excellent physical condition and that there was no evidence of prior injury to his back or otherwise. On July 14, 1948 (12 days after the execution of the contract) he was examined by another physician on behalf of the appellant who certified to the appellant that respondent was in excellent condition and there were no symptoms of previous back injury. Between July 14th and July 18th respondent engaged in the regular training activities in Ventura, with the rest of the team and took part in two vigorous scrimmages. On July 18th respondent developed a pain in the back of his leg and numbness in his foot which greatly interfered with his attempts to run and he immediately reported his condition to the team trainer, William Kapela, and the team head coach, James Phelan. During the next few days the trainer gave respondents treatments to alleviate the condition but with little or no success. The trainer made full written reports of respondent's condition to the insurance carrier, it being one of his duties. Shortly after July 18th, under the coach's instructions, respondent was examined by three orthopaedic specialists who, after examination, reported to appellant that the respondent was suffering from a herniated disc in his lower back and sometime prior to August 12th informed appellant that it would be very dangerous for him to attempt to play football and that it was doubtful, if not certain, that his playing days were over. Between July 18th and August 12th the respondent reported for practice in proper attire but was not able to

engage in the more strenuous activities and was not taken with the team on August 8th when it went to another city to engage in a practice game. Shortly prior to August 12th Mr. Benjamin F. Lindheimer, one of the successors of the club corporation and former chairman of the board instructed Mr. Don Ameche, president of appellant, to discharge respondent. On August 12th respondent received from Coach Phelan a letter, the body of which read as follows:

"Under the terms of your contract you agreed to be in proper physical condition to play professional football for our club. Our doctors medical report indicates that you are not in proper physical condition.

"We wish therefore, to advise you that your contract is terminated effective immediately." On August 20th respondent received from appellant a more formal notification of discharge. Prior to this, on August 12th, Coach Phelan suggested to the respondent that he see another orthopaedic specialist named Dr. Billig. He did so and Dr. Billig examined and treated him thereafter. Dr. Billig found him to be suffering from sciatic neuritis and under the doctor's treatment his condition rapidly improved. On August 23d Dr. Billig released him to resume his activities as a football player and on September 23d discharged him as fully recovered without fear of recurrence. On August ·12th respondent had protested being discharged and thereafter on many occasions had conferences with Coach Phelan and with officers of appellant informing them of Dr. Billig's reports of his condition and attempted to have himself reinstated and allowed to perform his contract. Appellant refused both requests. Respondent attempted to secure employment with some of the other clubs of the same football league without success and was informed in September by Mr. Lindheimer that he could not play with "The Chicago Rockets" (one of such clubs) and, "to get back to Los Angeles." On September 25th respondent's attorney, by letter to appellant, declared the disability was sustained by respondent while acting in the service of appellant and that respondent was then ready, able and willing to perform under the contract. On October 25th the complaint was filed.

The trial court found that on July 14th, respondent was examined by appellant's physician and found by him to be in excellent physical condition; that such physician was at that time informed of respondent's previous back injury "to-wit, a slipped disc." The court further found that on August 12th,

appellant notified respondent his contract was terminated; that respondent "has done and performed any and all conditions and covenants on his part to be done and performed under said contract, and in accordance with the terms and provisions thereof." The court also found that appellant did not terminate the contract for "good and sufficient reason or cause"; that prior to and at the time of the signing of the contract in question respondent did not make any false or fraudulent representation to appellant; that as a result of the termination respondent was damaged in the sum of $7,500; and that none of the allegations in the affirmative defenses were true.

■ ■ Appellant's principal attack upon the judgment centers about the finding of full performance quoted above and relies upon the rule laid down in the matter of the *Estate of Warner,* 158 Cal. 441 [111 P. 352]. The rule so laid down is that a complaint based upon a contract must allege either performance or a valid excuse for nonperformance; that the one is not the same as the other and if the plaintiff did not perform the contract but relies upon an excuse for nonperformance he must set forth the excuse in his complaint; further, that evidence of excuse will not support a finding of performance. We have no quarrel with this rule. However, it cannot avail appellant in this case. Under the allegations of the complaint and the findings of the court it was established that the contract was executed; that respondent commenced performance; that he was discharged and prevented from performing by appellant; that such discharge was without good or sufficient cause; and that appellant failed to pay $7,500 of the contract price and that respondent was damaged in that sum. Each of such findings is supported by substantial evidence and by inferences reasonably to be drawn therefrom. They are therefore binding on appeal. (*Dillard* v. *McKnight,* 34 Cal.2d 209, 223, 224 [209 P.2d 387, 11 A.L.R.2d 835].) Such allegations and findings constitute a complete cause of action and fully support the judgment. (*Barber* v. *Cazalis,* 30 Cal. 92, 97; *Nohl* v. *County of Del Norte,* 45 Cal.App. 306, 309 [187 P. 761]; *Long* v. *Thompson,* 45 Cal.App.2d 161, 168 [113 P.2d 698].) Appellant having discharged respondent without good cause and prevented him from performing, no further performance or offer to perform by respondent was required. (Civ. Code, §§ 1440, 1511.) He was entitled to treat the contract as at an end, insofar as performance was concerned, and sue for his lost profits. (*Sobelman* v. *Maier,* 203 Cal. 1, 9 [262 P. 1087].) The finding of full performance was

therefore unnecessary and may well be considered as immaterial and disregarded. (*Moore* v. *Mosher*, 88 Cal.App.2d 324 [198 P.2d 714].) It is difficult to understand why such allegation and finding were made. It is clear that during the trial respondent at no time contended that he had done all the things referred to in the contract, such as engaging in exhibition and league games. However, it may be that the pleader and the court considered that respondent had fully performed in that he had done substantially everything requested of him by appellant and that that was all that was required of him under the contract. Our examination of the transcript has revealed no instance in which respondent failed or refused to comply with any request by appellant. It is implicit in a contract of this character that the player can perform only those services that the coach of his team permits or requests him to perform and it is a matter of common knowledge that a player is under the complete control of his coach.

If we assume appellant made no requests for specific services from respondent after July 18th because of respondent's incapacity from injury, such injury and incapacity were not a ground under the contract for respondent's discharge. The court found that respondent's injury, causing his incapacity, was incurred while he was performing the services required of him. This finding is more fully considered hereafter. Such injury and incapacity was a risk which appellant specifically assumed under paragraph 7 of the contract. This paragraph reads in part as follows: "If this contract is terminated by Club by reason of Player's failure to render his services hereunder due to disability resulting directly from injury sustained in the performance of his services hereunder and written notice of such injury is given by the Player as provided in Regulation 6, Club agrees to pay Player at the rate stipulated in paragraph 2 [$8,000]. . . ." Paragraph 7 further provides that in all other cases, if the contract is terminated during the training season, the player will receive only his expenses.

Appellant further contends that it is relieved from liability because respondent admittedly failed to give the written notice required by paragraph 7 and regulation 6. With this we cannot agree. Regulation 6 reads as follows: "Written notice of any injury sustained by Player in rendering services under his contract, stating the time, place, cause and nature of the injury, shall be delivered to Club by Player within 10 days of the sustaining of the injury. In the absence

of such notice, disability of Player to perform his services resulting from such injury shall be cause for termination of Player's contract by Club without liability for payment beyond the date of termination." The apparent purpose of the required notice was to make certain that appellant was promptly and fully informed of any such injury so that it could take the necessary steps to have its trainer and doctors treat the injury and protect its investment in respondent. It may also have had some relation to the insurance carried on respondent by appellant. The evidence clearly establishes that respondent promptly gave appellant, through its trainer and coach, all information in his possession in regard to the injury and that appellant took full advantage of it by having respondent treated by its trainer and examined and treated by one of its doctors on July 19th and shortly thereafter by two others, and that these doctors made written reports to appellant of their findings. By so doing appellant waived the requirement of written notice. In addition, the trainer sent reports about the injury to the insurance company. Appellant was therefore as fully protected as if the required information had been given in writing. A written notice from respondent would have been an idle act.

■ Appellant also urges as a ground for reversal of the judgment that the court failed to make findings "concerning the cause of respondent's disability" and "concerning the requirement of written notice." Assuming that these are ultimate rather than evidentiary facts they were sufficiently covered by the findings made. The court found: "That each and all of the allegations upon which the affirmative defenses herein are based are untrue." By so doing the court found that it was not true, as alleged in the first affirmative defense, that at the time of entering into the contract respondent was not in a physical condition to render the services required or that a prior impairment of his physical condition then existed. Therefore the injury that caused respondent's disability must have been suffered after the execution of the contract. The only evidence offered or received of respondent's activities, after the contract date, whereby he could have been injured as found was that he had engaged in a strenuous conditioning program and during the four days of training, before his disability developed, had engaged in two scrimmages involving violent contacts with other players. Under such a state of the record the only finding that could reasonably have been made in that regard was that the injury causing respondent's

disability was suffered during the performance of the required services. If we assume as appellant contends that a specific finding on that issue is necessary then we must infer that the court so found. "Where an omitted finding must be inferred from a consideration of the findings actually made, an appellate court will recognize the necessary inference and consider the finding in question as having in effect been made. (*Reiniger* v. *Hassell*, 216 Cal. 209, 211 [13 P.2d 737]; *Publishers D. Service, Inc.* v. *Southern Cal. S. B. Depository, Ltd.*, 14 Cal.App.2d 448 [58 P.2d 401].)"

In addition to finding that the discharge was without cause the court also found that it was not true, as alleged in the third affirmative defense, that pursuant to paragraph 7 of the contract respondent had been fully compensated. As we have noted above it was under paragraph 7 that appellant contended that respondent's failure to give appellant written notice of his injury absolved appellant from liability to compensate respondent for anything except his training expenses and transportation. The court having found to the contrary it necessarily must have impliedly found that the failure of respondent to give the written notice did not bar his right of recovery and we must apply the rule of implied findings quoted above. If we were of the opinion that these two findings were not impliedly found, we would be impelled to make such findings under the power given this court under Code of Civil Procedure, section 956a.

The judgment is affirmed.

Wood (Parker), J., concurred.

SHINN, P. J.—I concur. Again I feel compelled to comment upon the prevalent lack of understanding on the part of counsel as to the function of findings and the importance of relating them to the material issues.

· There were findings that plaintiff is a resident of Los Angeles County; that defendant is a California corporation, and upon all the other allegations of the complaint which were admitted. There was also a finding that all the allegations of the affirmative defenses were untrue. By this blanket finding the court found that defendant did *not* discharge plaintiff because of physical disability; that the contract was *not* terminated during the training season; that defendant did *not* pay plaintiff's expenses and transportation as required by the contract; that the contract did *not* provide

for the reference of disputes to the conference commissioner as arbitrator; that plaintiff *did* refer the dispute between himself and defendant to the commissioner; that the contract did *not* require plaintiff to give notice of his claim to the commissioner within 90 days; that plaintiff *did* give notice to the commissioner as required by the contract. In all these respects the findings are exactly contrary to the admitted facts and the undisputed evidence. Such ill-considered, contradictory and obviously false findings are an imposition upon a reviewing court.

But the errors and defects do not end with the findings upon immaterial or admitted facts or with those last mentioned. The one important question was whether plaintiff suffered disability resulting directly from injury sustained in the performance of his services. There was no finding upon that issue, although defendant earnestly insisted in writing that a finding should be made, as well as specific findings upon other issues. Defendant even went so far as to make an unsuccessful application to the District Court of Appeal for a writ of mandate to require the court to make additional findings.

It will be seen from the main opinion that the court has been required to make a painstaking and laborious analysis of the findings in order to determine whether there is a reasonable basis for regarding them as sufficient to support the conclusions of law and judgment. I agree that there was substantial evidence to support the finding that plaintiff was physically able to play football when he first engaged in practice, and in view of this finding, I believe a finding that he was subsequently injured in the performance of his services should be implied. But even if the finding were not implied a contrary finding would not have been logical, inasmuch as there was nothing to suggest injury except in practice. By this narrow margin I conclude that the inadequate, contradictory, false and confusing findings do not justify a reversal.