[Civ. No. 16989. First Dist., Div. One. Dec. 18, 1956.]

ROLF HAGEN, Respondent, v. A. M. SHERMAN, Appellant.

Smith & Parrish and Edwin A. Clancy, Jr., for Appellant.

Barbagelata, Zief & Carmazzi, Robert D. Barbagelata and Rinaldo A. Carmazzi for Respondent.

BRAY, J.—Three questions are raised by this appeal by defendant from a judgment in favor of plaintiff in the sum of $2,500.[1] They are: (1) Was the contract rescinded by mutual consent? (2) Was it rescinded by defendant for unilateral mistake? (3) Does the evidence support the award of damages?

### EVIDENCE.[2]

Defendant owned a war surplus crane. In early November, 1953, plaintiff saw it in defendant's yard. There were some negotiations then between the parties concerning its purchase without a bucket by plaintiff. He testified that he had agreed to buy it for $800 or $900 but that when he went to arrange for payment defendant informed him it had been sold. Defendant's version was that plaintiff offered him $800 for the crane and defendant refused the offer. Later an oral agreement was entered into between the parties for the purchase of the crane plus a clamshell bucket by plaintiff for $1,750. November 17th, plaintiff gave defendant a check for $1,802.50 (the purchase price plus tax). The same day defendant gave plaintiff a sales slip or "invoice" describing the crane, giving the terms as "cash" showing the charge of $1,802.50 and marked "Paid by check No. 1." Plaintiff then understood that the crane became his. The next day plaintiff arranged with a draying company to move the crane to his residence. The following morning defendant phoned plaintiff and told him that the crane had been sold by defendant's brother to another person and that plaintiff should come to defendant's office and pick up his check. Defendant refused to tell plaintiff to whom the crane was sold.[3] Plaintiff told defendant that he would come to see defendant. Defendant testified that

[1]Defendant also purports to appeal from the order denying new trial. As no appeal lies therefrom, the purported appeal will have to be dismissed.

[2]Primarily, as we are required to do, we are stating the evidence, and the reasonable inferences therefrom, most favorable to plaintiff.

[3]Defendant testified that his brother informed him he had sold the crane the morning of the 17th. (The sale to plaintiff was in the afternoon.) Defendant went to Texas shortly after phoning plaintiff. On his return he learned that the sale by the brother had not been consummated, that there actually never was a sale.

when plaintiff offered him a check defendant said "That changes the deal altogether" as defendant considered it was no deal until defendant received the cash. Plaintiff assured him the check was good and then defendant said ". . . what can I lose. I still have the crane." Defendant testified that when he told plaintiff about the alleged sale by the brother plaintiff said he would be down to see defendant. Plaintiff went to defendant's office twice thereafter and left word for defendant to phone plaintiff, as defendant was not there. About a month after the sale to plaintiff, plaintiff stopped payment on the check. The crane is still in defendant's possession.

Plaintiff sued for breach of contract. Defendant denied the material allegations of the complaint and set up as a special defense that the contract was executed without any consideration. The court found against the special defense and in favor of plaintiff on the allegations of the complaint, awarding, however, $2,500 as the difference between the contract price and the reasonable market value of the crane, instead of $12,500 asked for in the complaint as being the cost of procuring a similar crane and loss of profits.

1. *Mutual Rescission.*

Defendant contends that the evidence discloses that, as a matter of law, plaintiff agreed to defendant's rescission of the contract. While the defense of mutual rescission is not pleaded, an examination of the transcript shows that without objection that theory was treated as an issue in the case. Therefore the failure to plead it is not important. (See *Malinow* v. *Dorenbaum,* 51 Cal.App.2d 645, 653 [125 P.2d 554].) There was no finding made upon the specific issue of rescission. None was requested. From the tenor of the findings as a whole it must necessarily be implied that the court found that no rescission existed. (See *Schultz* v. *Los Angeles Dons, Inc.* (1951), 107 Cal.App.2d 718, 724-725 [238 P.2d 73].)

"The question of whether a contract has been cancelled, rescinded or abandoned is a mixed question of law and fact [citations], which is addressed to the trial court [citations] and the finding of the trial court will be upheld if it is supported by substantial evidence." (*Ross* v. *Frank W. Dunne Co.,* 119 Cal.App.2d 690, 698-699 [260 P.2d 104] ; see also *Kane* v. *Sklar,* 122 Cal.App.2d 480, 482 [265 P.2d 29].)

In this case there was conflicting evidence, particularly the reasonable inferences to be drawn therefrom, upon this

issue. Plaintiff's version was that when informed by defendant that the crane had already been sold plaintiff stated that he would come to see defendant. He did not ask for his check back. He did go to defendant's office on two occasions but as defendant was away he was unable to see him. The crane, or a substantial portion of it, was gone from defendant's place. Bearing in mind that plaintiff believed that on a previous occasion defendant had reneged on a sale to him of the crane, we see nothing inconsistent in his waiting for an opportunity to discuss with defendant the matter of the second refusal to deliver the crane. While plaintiff's actions might have supported a conclusion that he consented to a rescission or abandonment of the contract, such conclusion is not the only reasonable one which could be drawn. Applicable here is the following from *Ross* v. *Frank W. Dunne Co., supra,* 119 Cal.App.2d at page 699: ". . . the record shows that the parties did terminate their dealings, but respondents did so only because appellant failed and refused to live up to the agreement. This does not appear to amount to a mutual cancellation, rescission or abandonment."

*McCreary* v. *Mercury Lbr. Distributors,* 124 Cal.App.2d 477 [268 P.2d 762], cited by defendant, differs from our case in that there the acquiescence in the abandonment of the contract was shown by a number of acts including negotiations for a new contract.

2. *Unilateral Mistake.*

Defendant contends that even though plaintiff did not consent to the attempted rescission, defendant was entitled to rescind upon the ground of unilateral mistake. Civ. Code, § 1689, subd. 1; *M. F. Kemper Const. Co.* v. *City of Los Angeles,* 37 Cal.2d 696, 701 [235 P.2d 7].) ▮ Here again this issue was not pleaded nor were findings on the subject asked. However, the transcript shows that the issue was presented at the trial. The court found that defendant "failed and refused to perform his part of the said contract." While not specifically a finding that there was no unilateral mistake, it is sufficient in the absence of a pleading and request for a finding on the subject, to constitute an implied finding to that effect. It is obvious that the court rejected defendant's testimony both as to the rescission and as to the alleged mistake. The evidence of a prior sale by the brother is very flimsy indeed. He took no order for the sale and received no deposit. The brother's testimony was that after showing the

crane to the third person the brother *"assumed . . .* that he was about to purchase the crane, and I informed him [defendant] that I *thought* I had it sold." (Emphasis added.) The nebulous character of this alleged sale which admittedly was never consummated aṣ testified to by both defendant and his brother, would support a conclusion that, just as happened on a prior occasion, defendant changed his mind about selling the crane to plaintiff and that there was no mistake of fact made by him.

3. *Damages.*

 Defendant contends that there is no evidence to support the court's finding that the difference in the value between the contract price of the crane and the reasonable market value at the time of the execution of the contract was $2,500. (Defendant's evidence was that it was not worth more than the contract price, if it even was worth that much.)

Plaintiff called one Enge who admitted that he was a reluctant witness. No attack is made upon his competency as an expert witness on the value of cranes. Disregarding his testimony on direct examination in which he admitted that he had told plaintiff that sight unseen, a crane of that type was worth $2,500 for junk value, as defendant claims we must (see *People* v. *Newson,* 37 Cal.2d 34 [230 P.2d 618]; *Bassett* v. *Crisp,* 113 Cal.App.2d 295 [248 P.2d 171]), on cross-examination he testified that the crane's reasonable market value in November, 1953, was around $5,000. In spite of defendant's contention that the witness might have thought he was answering some other question, a reading of the transcript leaves no room for such interpretation, particularly in view of his testimony that his firm had purchased a similar type crane without bucket for around $4,500. This answer alone (and nowhere did he make any contrary answer) would support the court's finding.

Plaintiff, whose vocation was that of a probation officer, testified without objection that for some time he had been looking around for cranes of this type and got an idea of what cranes were selling for, and found that they cost $7,000 or $8,000. Plaintiff's counsel asked plaintiff, after he had told him what investigation he had made of cranes and their prices, if he felt that he could tell the reasonable market value of the crane. Defendant objected to the question as calling for the opinion and conclusion of the witness. The court overruled the objection. Then plaintiff's counsel stated: "I think he is qualified, Your Honor. He saw many people and

they told him about— '' Defendant's counsel immediately said "He said he could answer it. All right. So, go ahead.'' The witness said ''Yes.'' Thereupon he was asked and gave his opinion as to the reasonable market value of the crane being $7,000. As owner he was entitled to give his opinion. (See *People* v. *Jones*, 67 Cal.App.2d 531, 537 [155 P.2d 71]; *Spring Valley W. W.* v. *Drinkhouse*, 92 Cal. 528 [28 P. 681].) Even without this answer, it is obvious that there was substantial evidence that the crane was worth the $4,250 value the court found.

Appeal from order denying new trial dismissed. Judgment affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.