[No. B179237. Second Dist., Div. Six. Sept. 8, 2005.]

MEDICAL STAFF OF DOCTORS MEDICAL CENTER IN MODESTO et al., Plaintiffs and Respondents, v.
IVAN JEFFERY KAMIL et al., Defendants and Appellants.

COUNSEL

Gibbs, Giden, Locher & Turner, Michael B. Geibel; Musick, Peeler & Garrett and Cheryl A. Orr for Defendants and Appellants.

Bond Curtis, Charles Bond, Sophie Cohen and Mitchell J. Green for Plaintiffs and Respondents.

OPINION

**GILBERT, P. J.**—A service agreement between a medical group and an insurance provider requires arbitration of any dispute "concerning the terms of [the] [a]greement." The insurance provider seeks to terminate the agreement because of alleged inadequate performance by the medical group. The insurance provider issues press releases that allegedly defame the medical group.

██   Although the dispute may have given rise to the alleged defamation, the broad arbitration clause has boundaries. It does not apply to the medical group's defamation action against the insurance provider. Defendants appeal the denial of their motion to compel arbitration. We affirm.

## FACTS

### Complaint

The plaintiffs are Valley Heart Associates Medical Group, Inc., 16 individual physicians employed by Valley Heart (collectively Physicians), and the Medical Staff of Doctors Medical Center in Modesto, an unincorporated association of physicians practicing at Doctors Medical Center (Medical Staff).

The defendants are Blue Cross of California, its parent corporation, Wellpoint Health Networks, Inc., individual officers of Blue Cross, a spokesman for Blue Cross (collectively Blue Cross), and Health Benchmarks.

The complaint alleges as follows:

Sometime in 2003, Blue Cross requested confidential medical records from Doctors Medical Center (Hospital) relating to cardiac procedures performed on Blue Cross members. Blue Cross retained Health Benchmarks to conduct a study of those records.

On October 31, 2003, Blue Cross sent a letter to Hospital giving notice of its intent to terminate the agreement between Blue Cross and Hospital. The letter cited Hospital's failure to maintain quality assurance, peer review, and utilization management procedures. The letter also cited medically unnecessary coronary bypass surgeries billed to Blue Cross.

Between October 29, 2003, and November 22, 2003, Blue Cross published letters, press releases and other writings and made oral statements that 59 percent of the heart procedures performed by Physicians were medically unnecessary. The statements also said Medical Staff was complicit in and knowingly permitted Physicians to perform these procedures. The statements were purportedly based on the study conducted by Health Benchmarks. Blue Cross published the statements to the Los Angeles Times, the Modesto Bee and the Sacramento Bee, and posted a press release on the Web site of Blue Cross. The publication of the statements resulted in stories in each of those newspapers. The statements were false, and Blue Cross twice admitted they were false. Blue Cross reaffirmed and republished the statements even after admitting they were false.

The complaint further alleged that Blue Cross acted maliciously and for financial gain. It alleged Blue Cross acted in retaliation for the Physicians' opposition to new approval practices that would have had an adverse impact on patient care. The complaint alleged causes of action for defamation and violation of Business and Professions Code section 2056, prohibiting retaliation for advocating medically appropriate health care.

Blue Cross moved to compel arbitration under its contract with Physicians and Hospital. The trial court denied the motion on the ground that the arbitration clause is not broad enough to encompass the dispute, and that Medical Staff was not a party to any agreement with Blue Cross. Health Benchmarks did not join in the motion.

## DISCUSSION

### I

Blue Cross contends the claims stated in the complaint fall within the scope of the arbitration agreement.

The agreement between Blue Cross and Physicians contains a general arbitration clause that provides in part: "BLUE CROSS and PHYSICIAN agree to meet and confer in good faith to resolve any problems or disputes that may arise under this Agreement. [¶] In the event that any problem or dispute concerning the terms of this Agreement, other than a Utilization

Review decision as provided for in Article VII, is not satisfactorily resolved, BLUE CROSS and PHYSICIAN agree to arbitrate such problem or dispute."

The first sentence of the clause requires the parties to confer in good faith to resolve disputes that arise under the agreement. The next sentence apparently limits arbitration to those disputes *concerning the terms of the agreement.*

The agreement also contains an arbitration clause for "Utilization Review" as follows: "PHYSICIAN agrees to submit any dispute concerning a Utilization Review decision, unresolved by reconsideration or review pursuant to the terms of Section 7.5, to binding arbitration. The arbitration shall be commenced by PHYSICIAN by making written demand on BLUE CROSS. The scope of that arbitration shall be limited to a determination of whether, or to what extent, benefits specified in the applicable Prudent Buyer Benefit Agreement were Medically Necessary or otherwise payable for the claim or claims in dispute." The agreement defines "Utilization Review" as "a function performed by BLUE CROSS to review and approve whether Medical Services provided, or to be provided, are Medically Necessary."

Blue Cross argues the cases establish that a broadly worded arbitration clause applies to any controversy that has its " 'roots' " in the contractual relationship. (*Wolitarsky v. Blue Cross of California* (1997) 53 Cal.App.4th 338, 347–348 [61 Cal.Rptr.2d 629].) It relies on the general arbitration clause that requires arbitration of disputes concerning the terms of the agreement. Even assuming this clause can reasonably be read to encompass disputes having "roots" in the contract relationship, or arising out of that relationship, Blue Cross does not prevail.

■ We interpret a contract to give effect to the mutual intent of the parties as expressed in its language. (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 684, p. 617.) The words of the contract are given their ordinary and popular meaning unless used by the parties in a technical sense. (*Id.* at § 685, p. 618.) We construe the contract in light of the circumstances under which it was made, including its subject. (*Id.* at § 688, p. 621.)

Here the contract between Blue Cross and Physicians is to provide medical care for Blue Cross beneficiaries. The question is whether the seemingly innocuous phrase "concerning the terms of" the agreement to provide medical care can reasonably be said to include the alleged malicious destruction of the Physicians' personal and professional reputations. To ask the question is to answer it. The answer is no. There may be cases where the alleged defamation is so intimately bound with the terms of the agreement that arbitration is appropriate. But the terms of this agreement do not give Blue Cross carte

blanche to publicly pillory Physicians in press releases and newspaper reports as alleged here. The defamation complained of here no more concerns the terms of the agreement, than would a punch in the nose during a dispute over a medical billing.

In *Vianna v. Doctors' Management Co.* (1994) 27 Cal.App.4th 1186, 1190 [33 Cal.Rptr.2d 188], a doctor who was accused of sexually harassing another employee's husband was forced to resign. The doctor sued for defamation, among other things. The court held his complaint was subject to arbitration under a clause very similar to the general arbitration clause in contention here. But in *Vianna* there was no suggestion that the defamation occurred by publishing the matter in press releases and newspaper articles.

■ Blue Cross relies on the policy favoring arbitration. (Citing *Bos Material Handling, Inc. v. Crown Controls Corp.* (1982) 137 Cal.App.3d 99, 105 [186 Cal.Rptr. 740].) But no policy favors the arbitration of disputes the parties have not agreed to arbitrate. (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800].)

In any event, even assuming the dispute can somehow be said to come within the scope of the general arbitration clause, that clause has an exception. The exception is for a "Utilization Review decision." The agreement defines "Utilization Review" as "a function performed by BLUE CROSS to review and approve whether Medical Services provided, or to be provided, are Medically Necessary." The media reports to which the defamation claims relate, arose from a study commissioned by Blue Cross that questioned the medical necessity of cardiac surgeries performed at Hospital. Thus if the dispute relates to any term of the agreement, it relates to "Utilization Review."

A separate clause governs arbitration of a dispute concerning a "Utilization Review decision." But the scope of that clause is expressly limited to "a determination of whether, or to what extent, benefits specified in the applicable Prudent Buyer Benefit Agreement were Medically Necessary or otherwise payable for the claim or claims in dispute." Thus under this clause, arbitration is limited to disputes over the payment of claims. The causes of action alleged here, for defamation and violation of Business and Professions Code section 2056, are clearly outside the scope of that clause.

Blue Cross relies on the declaration of Doctor Ivan Jeffery Kamil, its vice-president and medical director. Kamil stated in part: "The study conducted by Health Benchmarks, Inc. was not a 'Utilization Review' by BLUE CROSS. . . . [A] Utilization Review is used in connection with services on a

patient by patient basis, usually for pre-authorization or concurrent authorization of certain medical procedures. At no time did BLUE CROSS deny benefits for the surgeries performed."

Blue Cross claims the declaration is uncontradicted. But the statement is contradicted by the terms of the contract. Nothing in the contract's definition of "Utilization Review" limits it to a "patient by patient" review for authorization of medical procedures or benefit payments.

■ Blue Cross argues the trial court made an implied finding that the dispute did not arise from a "Utilization Review." It believes we are bound by such a finding. But findings are only implied to support the judgment or order. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 349, pp. 394–395.) This is not a case in which an explicit finding necessarily implies another finding. (See *Schultz v. Los Angeles Dons, Inc.* (1951) 107 Cal.App.2d 718, 725 [238 P.2d 73].) The trial court determined that the general arbitration clause is not broad enough to cover the dispute. Because the general arbitration clause excepts "Utilization Review" decisions, the trial court's determination does not imply a finding that the Health Benchmarks study is not a "Utilization Review."

Blue Cross argues that the Physicians' claim under Business and Professions Code section 2056 is not a "Utilization Review" dispute. But if the claim has its roots in any term of the agreement, it has its roots in the "Utilization Review" study performed by Health Benchmarks. That is sufficient to deem it a dispute concerning a "Utilization Review decision."

## II

We also agree with the trial court that Medical Staff is not bound by the agreement between Blue Cross and Hospital.

■ By law, every hospital is required to have a medical staff. (Cal. Code Regs., tit. 22, § 70703, subd. (a).) The medical staff oversees physicians who practice at the hospital. (*Hongsathavij v. Queen of Angels etc.* (1998) 62 Cal.App.4th 1123, 1130, fn. 2 [73 Cal.Rptr.2d 695].) The medical staff is a separate legal entity. (*Ibid.*) It is a self-governing unincorporated association, independent from the hospital. (*Ibid.*)

■ Blue Cross argues Medical Staff is bound as a third party beneficiary of the Hospital contract. But a third party beneficiary contract must either satisfy an obligation of the promisee to pay money to the beneficiary, or the circumstances indicate the promisee intends to give the beneficiary the benefit of the promised performance. (1 Witkin, Summary of Cal. Law, *supra,*

Contracts § 655, pp. 594–595.) Blue Cross fails to show that either of those circumstances apply here. The benefit of the Hospital's contract with Blue Cross is the payment of money for hospital services. There is no showing Medical Staff ever received or was intended to receive those payments. To the extent Medical Staff may benefit from the Hospital's contract, the benefit is purely incidental.

Blue Cross claims that Hospital is the only entity that has the authority to contract with health care service providers for medical services provided by Medical Staff. But Medical Staff does not provide medical services, it polices the Physicians who do. (*Hongsathavij v. Queen of Angels etc.*, *supra*, 62 Cal.App.4th at p. 1130, fn. 2.) In any event, even if Hospital staff cannot contract on its own, Blue Cross cites no authority that that makes Medical Staff subject to the Hospital's contract.

Blue Cross's reliance on *Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759 [28 Cal.Rptr.3d 752], is misplaced. There the court held that the agent of both parties to a real estate purchase contract was bound by the parties' agreement to arbitrate. Blue Cross fails to cite any authority that Medical Staff is the Hospital's agent or has any similar relationship to Hospital.

The judgment (order) is affirmed. Costs are awarded to respondents.

Yegan, J., and Coffee, J., concurred.

A petition for a rehearing was denied October 6, 2005, and the opinion was modified to read as printed above.